Rick PERRY, in his official capacity as Governor of the State of Texas, and Henry Cuellar, in his official capacity as Secretary of State of the State of Texas, Petitioners,

v.

Alicia DEL RIO, Phyllis Dunham, and Jeremy Wright, Respondents.

Rick Perry, in his official capacity as Governor of the State of Texas, and Henry Cuellar, in his official capacity as Secretary of State of the State of Texas, Petitioners,

v.

Martha Cotera, Respondent.

In re Ken Bentsen, et al., Relators.

Nos. 01–0728, 01–0810, 01–0827.

Supreme Court of Texas.

Argued Sept. 10, 2001.

Decided Sept. 12, 2001.

Lee E. Parsley, Andy Taylor, Jan Soifer, Locke Liddell & Sapp, Austin, C. Robert Heath, David Mendez, Bickerstaff Heath Smiley Pollan Kever & McDaniel, Austin, John Cornyn, Atty. Gen., Philip A. Lionberger, Lisa Royce Eskow, Julie Caruthers Parsley, Atty. Gens., for Petitioner in Dkt. No. 01-0728.

Renea Hicks, Attorney At Law, E. Leon Carter, Case Carter Salyers & Henry, David Weiser, Kator Parks & Weiser, Austin, for Respondents in Dkt. No. 01-0728.

Jan Soifer, E. Lee Parsley, Andy Taylor, Locke Liddell & Sapp, Austin, C. Robert Heath, David Mendez, Steve Bickerstaff, Bickerstaff Heath Smiley, Pollan, Kever & McDaniel, Austin, John Cornyn, Julie Caruthers Parsley, Philip A. Lionberger, Lisa Royce Eskow, Attorney Generals, Austin, for Petitioners in Dkt. No. 01-0810.

David Weiser, Kator Parks & Weiser, Austin, Richard E. Gray, III, Gray & Becker, Austin, for Respondent in Dkt. No. 01-0810.

Russell S. Post, Richard P. Hogan, Jennifer Bruch Hogan, Kevin H. Dubose, Roger Townsend, Hogan Dubose & Townsend, Houston, for Relator in Dkt. No. 01-0827.

George Irvin Terrell, Samuel W. Cooper, Kevin Thomas Jacobs, Baker Botts, L.L.P., Houston, E. Leon Carter, Barbara Kay Salyers, Case Carter Salyers & Henry, Dallas, for Respondent in Dkt. No. 01-0827.

Justice HECHT, delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice ENOCH, Justice OWEN, Justice HANKINSON, Justice O'NEILL, Justice JEFFERSON, and Justice RODRIGUEZ joined.

Four cases challenging the constitutionality of the State's congressional districts in light of the 2000 decennial census, all involving essentially the same issues, parties, lawyers, and witnesses, were set for trial on the same day, September 10, 2001, two in a district court in Travis County[1] and two in a district court in Harris County.[2] Before us are two interlocutory appeals from the cases in Travis County, an original mandamus proceeding arising out of the cases in Harris County, and motions to stay the trials in all of the cases. The central dispute is over which of the two district courts has dominant jurisdiction and should proceed to trial first. We hold, for reasons that we explain, that the district court in Travis County has dominant jurisdiction and should proceed to trial immediately, and that the district court in Harris County should abate the cases pending there. We conditionally grant the petition for writ of mandamus in No. 01-0827 and dismiss the interlocutory appeals in No. 01-0728 and No. 01-0810 as moot. The stays we previously issued are lifted. Because of the importance of completing the trial with dispatch, no motions for rehearing will be entertained.[3]

# I

The members of the United States House of Representatives must be "apportioned among the several States according to their respective numbers"[4] as determined by the decennial census.[5] As a result of the 2000 census, Texas is entitled to two additional congressional delegates, and thus the State's congressional districts must be redrawn. Although the United

---

1. *Del Rio v. Perry,* No. GN-003665 (353rd Dist. Ct., Travis County, Tex., filed Dec, 27, 2000); *Cotera v. Perry,* No. GN-101660 (353rd Dist. Ct., Travis County, Tex., filed May 31, 2001).

2. *Associated Republicans of Texas v. Cuellar,* No.2001-26894 (281st Dist. Ct., Harris County, Tex., filed May 24, 2001); *Rivas v. Cuellar,* No.2001-33760 (152nd Dist. Ct., Harris County, Tex., filed July 3, 2001). The cases have been consolidated in the 281st District Court.

3. Tex.R.App. P. 64.1.

4. U.S. Const. amend. XIV, § 2.

5. *Id.* art. I, § 2, cl. 3.

States Supreme Court has held "[f]rom the beginning" that redistricting " 'is primarily a matter for legislative consideration and determination,' "[6] the 77th Legislature this year adjourned its regular session without redrawing congressional districts, and the Governor has notified the presiding officers of that body that he will not reconvene it in special session to consider redistricting "at this time".[7] It therefore falls to the courts—first the Texas courts and then those of the United States—to reconstruct the State's congressional districts.[8] The federal courts must defer, but only for a reasonable time, and may set a deadline for state courts to act.[9] That deadline, set by the United States District Court for the Eastern District of Texas in three of the five congressional redistricting cases filed in federal courts this year, is October 1, 2001, after which the federal court has stated that if no state redistricting plan is adopted it will proceed in its own cases to minimize the "risk of disrupting and delaying elections".[10]

Five congressional redistricting cases, all raising essentially the same issues, have been filed in Texas courts, three in Travis County by persons identified with the Democratic Party,[11] and two in Harris County by persons identified with the Republican Party.[12] The Legislature has not provided adequate procedures for judicial administration to prevent undesirable forum-shopping and provide a simple means for designating a single court and judge for trial of these issues, thereby saving

---

6. *White v. Weiser,* 412 U.S. 783, 794, 93 S.Ct. 2348, 37 L.Ed.2d 335 (1973) (quoting *Reynolds v. Sims,* 377 U.S. 533, 586, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964)).

7. Letter from Governor Rick Perry to Lieutenant Governor Bill Ratliff and James E. "Pete" Laney, Speaker of the House of Representatives (July 3, 2001):

 As you know, on May 26 I asked each of you to work with your respective colleagues to build support for a congressional redistricting plan that could be passed into law. After visiting with both of you, and after reviewing the efforts of your respective redistricting committees, it is now clear to me that the Texas Legislature is not currently able to reach a consensus on a new congressional plan.

 Although I expect Texans will be disappointed with the inability to accomplish this task, I believe Texans would be even more disappointed if we expend considerable sums of taxpayer money to call the legislature into a special session that has no promise of yielding a redistricting plan for Congress. I, therefore, have decided that it is not in the best interest of our State to call a special session at this time.

8. *Growe v. Emison,* 507 U.S. 25, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993); *Scott v. Germano,* 381 U.S. 407, 85 S.Ct. 1525, 14 L.Ed.2d 477 (1965) (per curiam); *Wesberry v. Sanders,* 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964).

9. *Growe,* 507 U.S. at 35–37, 113 S.Ct. 1075.

10. *Balderas v. Texas,* Civil No. 6:01–CV–158 (E.D. Tex., order filed July 23, 2001); *Mayfield v. Texas,* Civil No. 6:01–CV–218 (E.D. Tex., order filed July 23, 2001); *Manley v. Texas,* Civil No. 6:01–CV–231 (E.D. Tex., order filed July 23, 2001). The other two pending federal court cases are *Associated Republicans of Texas v. Texas,* Civil No. W–01–CA–167 (W.D. Tex., filed May 25, 2001), and *Anderson v. Texas,* Civil No. W–01–CA–214 (W.D. Tex., filed July 6, 2001). Also, a motion to reopen proceedings was filed in *Vera v. Bush,* Civil No. H–94–0277 (S.D. Tex., filed Jan. 26, 1994).

11. *Del Rio v. Perry,* No. GN–003665 (353rd Dist. Ct., Travis County, Tex., filed Dec, 27, 2000); *Cotera v. Perry,* No. GN–101660 (353rd Dist. Ct., Travis County, Tex., filed May 31, 2001); *Connolly v. Perry,* No. GN–102250 (98th Dist. Ct., Travis County, Tex., filed July 23, 2001).

12. *Associated Republicans of Texas v. Cuellar,* No.2001–26894 (281st Dist. Ct., Harris County, Tex., filed May 24, 2001); *Rivas v. Cuellar,* No.2001–33760 (152nd Dist. Ct., Harris County, Tex., filed July 3, 2001).

taxpayers and litigants the unnecessary cost of multiple proceedings involving the same issues and preventing delay that could disrupt the 2002 elections. Therefore, we must attempt to apply general legal principles for determining dominant jurisdiction between competing trial courts to resolve the mounting disputes that threaten any final state-court resolution of congressional redistricting issues before the October 1 deadline. To do so, we must explain in some detail the procedural history of the pending cases.

The first case, *Del Rio v. Perry*, was filed in Travis County on December 27, 2000.[13] At that time, no official census data was available—the U.S. Secretary of Commerce did not release preliminary state-by-state figures until the next day—but the plaintiffs [14] asserted that estimates by the Texas Legislative Council [15] showed that Texas would be apportioned two additional congressional seats. The plaintiffs acknowledged that "the appropriate opportunity" for correcting their complaints was in the regular legislative session that would convene January 9, 2001, but alleged that there was "reason to believe" that the Legislature would deadlock over a redistricting plan. The plaintiffs asserted that the trial court could act "[i]f the State of Texas fails to enact a new congressional redistricting plan in the 2001 session, or if it enacts one that is legally inadequate". The plaintiffs named as defendants the State of Texas, the Governor, the presiding officers of the Senate and House of Representatives, the Secretary of State, and the chairs of the Texas Democratic Party and the Texas Republican Party. All of the defendants except the Democratic Party chair filed pleas to the jurisdiction, asserting that the case was not ripe when it was filed and therefore the court lacked subject matter jurisdiction. The Democratic Party chair filed a plea in abatement, urging that the action be left pending in the event that judicial action should become warranted.

The detailed census data necessary for redistricting was not released until March 12, 2001. Prior to that date, three congressional redistricting cases had been filed in federal courts.[16] Each of these cases was dismissed for lack of ripeness necessary for jurisdiction because the Legislature had not had an opportunity to adopt a redistricting plan.[17] In one of the cases, dismissed on May 8, the federal court stated that "there is no threat that the Texas Legislature will fail to enact valid redistricting plans before the next election cycle begins." [18] That same day, however, the *Del Rio* plaintiffs amended

**13.** *Del Rio v. Perry*, No. GN–003665 (353rd Dist. Ct., Travis County, Tex., filed Dec, 27, 2000).

**14.** Alicia Del Rio, Phyllis Dunham, and Jeremy Wright.

**15.** Tex. Gov't Code § 323.001.

**16.** *Mayfield v. Texas*, No. 2:00–CV–268 (E.D. Tex., filed Dec. 28, 2000); *Lee v. Texas*, No. 6:01–CV–98 (E.D. Tex., filed Mar. 5, 2001); *Associated Republicans of Texas v. Texas*, No. W01–CA–083 (W.D. Tex., filed Mar. 9, 2001). Also, a motion to reopen proceedings was filed in *Vera v. Bush*, Civil No. H–94–0277 (S.D. Tex., filed Jan. 26, 1994).

**17.** *Mayfield v. Texas*, No. 2:00–CV–268 (E.D. Tex., order filed Apr. 26, 2001); *Lee v. Texas*, No. 6:01–CV–98 (E.D. Tex., order filed Apr. 26, 2001); *Associated Republicans of Texas v. Texas*, No. W01–CA–083 (W.D. Tex., order filed May 8, 2001). Also, the motion to reopen proceedings was denied in *Vera v. Bush*, Civil No. H–94–0277 (S.D. Tex., order filed May 31, 2001).

**18.** *Associated Republicans of Texas v. Texas*, No. W01–CA–083 (W.D. Tex., order filed May 8, 2001) (memorandum and order at 6).

their petition to allege that although the Legislature had full access to the necessary census data, "there is reason to believe that the State of Texas will deadlock over congressional redistricting and fail to enact a new plan in the regular session of the Texas Legislature that is now in progress." The plaintiffs alleged that no congressional redistricting bills had been reported out of committee, and that House rules set May 10 as the last day for the House to pass its own bills and May 18 as the last day for the House to receive Senate bills. "For all practical purposes," the plaintiffs asserted, it was "a near-certainty" that the Legislature would fail to redraw congressional districts during its regular session.

On May 15, the district court in *Del Rio* heard the defendants' pleas to the jurisdiction (excluding Speaker Laney's) but did not announce a decision. On May 24, four days before the adjournment of the Legislature, the second state redistricting case,

*Associated Republicans of Texas v. Cuellar*,[19] was filed in Harris County. The petition alleged that "[d]ue to the rules of the Texas Legislature," it was "almost certain that no redistricting plan of any kind will be passed by the Texas Legislature in its regular session." The petition did not address, however, whether the rules of the House and Senate could be suspended to permit last-minute consideration of a congressional redistricting plan.[20] While the plaintiffs acknowledged that it remained uncertain whether the Governor would convene a special session of the Legislature, they asserted that it was unlikely because there was "no sign that the Texas Legislature could produce a plan in a special session." Two days later, Governor Perry wrote to Lieutenant Governor Ratliff and Speaker Laney, urging that the Legislature continue to work on redistricting after the regular session, and stating that he would call a special session once acceptable plans were produced.[21]

19. *Associated Republicans of Texas v. Cuellar,* No.2001–26894 (281st Dist. Ct., Harris County, Tex., filed May 24, 2001).

20. *See* Rules of the Texas Senate, Tex. S.R. 3, 77th Leg., R.S. (2001) (adopting with minor changes Tex. S.R. 40, 76th Leg., R.S. (1999), in turn adopting with minor changes Tex. S.R. 3, 75th Leg. R.S. (1997)), Rule 22.01 ("It shall require a vote of two-thirds of the members present to suspend any rule of the Senate, unless the rules specify a different majority."); Rules of the Texas House of Representatives, Tex. H.R. 5, 77th Leg., R.S. (2001), Rule 8, § 13, House Precedents No. 1 ("The point of order [that time under the rules has expired] is raised every session, and just as regularly overruled. Such a ruling is justified by necessity, custom, and precedent. It is usually impossible to wind up the business of a session within the exact number of hours remaining after the twenty-four hour rule and other end-of-the-session rules are in force. In fact, it is customary to suspend most of these rules for specific purposes in order to complete the session's business."); *id.* Rule 14, § 3 ("A motion to suspend the rules shall be in order at any time, except

when motions to adjourn or recess are pending, even when the house is operating under the previous question.").

21. Letter from Governor Rick Perry to Lieutenant Governor Bill Ratliff and James E. "Pete" Laney, Speaker of the House of Representatives (May 26, 2001):

I have on several occasions discussed with each of you the possibility of calling a special session to consider congressional and State Board of Education redistricting. While a special session may be necessary, it is expensive for the State and disruptive to the lives of the citizen legislators who are about to complete a grueling 140–day regular session.

It is to everyone's benefit that any special session be conducted in as efficient a manner as possible and have the best chance of producing a positive result. To that end, I ask that the House and Senate begin work soon after the adjournment of the regular session on drawing congressional and State Board of Education plans that can receive the support of both houses. Once they have

On May 28, the Legislature adjourned *sine die* without having adopted a redistricting plan for the congressional delegation, the Senate, the House, or the State Board of Education. Three days later, on May 31, the plaintiffs in *Del Rio* again amended their petition, noting that the Legislature had not redrawn congressional districts during its regular session, and asserting that a special session would be unlikely. These allegations were echoed in a new case filed the same day in the same court against the same defendants, *Cotera v. Perry*,[22] the third congressional redistricting case to be filed in state court. Four of the defendants—the Governor, the Lieutenant Governor, the Secretary of State, and Weddington, the Republican Party chair—filed pleas to the jurisdiction asserting that *Cotera* was not ripe when it was filed and should be dismissed because of the real possibility on May 31 that the Governor would reconvene the Legislature in special session. Indeed, the pleas noted, it was at that time even likely that the Governor would call a special session, given that congressional redistricting plans had been enacted in special sessions in 1971, 1981, and 1991.[23]

On June 1, the trial court in *Del Rio* resumed the hearing on the defendants' pleas to the jurisdiction and at the conclu-

sion, indicated that it would overrule them. The court signed an order to that effect on June 13. The day before the order was signed, the plaintiffs nonsuited the State of Texas, hoping to forestall an interlocutory appeal, which is allowed from an order denying a plea to the jurisdiction by a governmental unit.[24] Nevertheless, the Governor, the Lieutenant Governor, and the Secretary of State filed notices of appeal. Defendant Weddington, believing that she was not entitled to appeal, petitioned this Court for review by mandamus. We denied Weddington's petition for mandamus because she had not first presented it to the court of appeals.[25] While the interlocutory appeal remained pending in the court of appeals, the plaintiff[26] in *Cotera* nonsuited the State of Texas as the plaintiffs had done in *Del Rio*, the trial court granted defendant Laney's motion to consolidate *Del Rio* and *Cotera*, and the court overruled the defendants' pleas to the jurisdiction in *Cotera*.

On August 9, the court of appeals affirmed the denial of the pleas to the jurisdiction in *Del Rio*.[27] Although no appeal had yet been taken from the trial court's denial of the pleas to the jurisdiction in *Cotera*, the court held that the plaintiff's claims in that case were clearly ripe be-

produced acceptable plans, I will call a special session for that purpose. In this way we can have the entire Legislature in special session in the most efficient manner and, I believe, improve the chances of a successful outcome.

I urge you to begin work and to accomplish the task as soon as possible, and I pledge to be of what assistance I can to assist in achieving a positive result.

**22.** *Cotera v. Perry*, No. GN–101660 (353rd Dist. Ct., Travis County, Tex., filed May 31, 2001).

**23.** Act of June 4, 1971, 62nd Leg., 1st C.S., ch. 12, 1971 Tex. Gen. Laws 38; Act of Aug. 10, 1981, 67th Leg., 1st C.S., ch. 2, 1981 Tex.

Gen. Laws 37; Act of Aug. 25, 1991, 72nd Leg., 2nd C.S., ch. 7, 1991 Tex. Gen. Laws 41.

**24.** TEX. CIV. PRAC. & REM.CODE § 51.014(a)(8) ("A person may appeal from an interlocutory order of a district court, county court at law, or county court that ... grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001.").

**25.** 44 Tex. Sup.Ct. J. 1056 (Aug. 1, 2001) (citing TEX.R.APP. P. 52.3(e)).

**26.** Martha Cotera.

**27.** 53 S.W.3d 818 (Tex.App.—Austin 2001).

cause "[o]nce the legislature adjourned without having passed a redistricting bill, the issue was ripe for litigation." Then the Court concluded: "Having determined that Cotera's claims were ripe, we need not decide the issue regarding Del Rio's claims because the two causes are now consolidated. We must decide the appeal based upon the posture of the record before us."[28] The court also held that the appellants were entitled to take an interlocutory appeal as "governmental units" because they were sued in their official capacities.[29]

The Governor, the Lieutenant Governor, and the Secretary of State also appealed from the denial of their pleas to the jurisdiction in *Cotera*. The appellees moved the court of appeals to affirm the trial court's rulings summarily because the very same issues had already been decided in the prior appeal. On August 31, the court of appeals dismissed the Cotera appeal for want of jurisdiction.[30]

Concurrent with all of the activity in the Travis County cases, litigation over the same issues in Harris County was no less active. On July 3, the fourth congressional redistricting case in state court, *Rivas v.*

*Cuellar*,[31] was filed in Harris County against the same defendants named in *ART*. The petition asserted that not only had the Legislature not enacted a congressional redistricting plan during its regular session, "neither chamber did substantial work" on a plan. The petition further asserted that "Governor Perry has announced that he will not call a special session of the Texas Legislature"—the formal announcement, as we have already said, was made on July 3,[32] the very day *Rivas* was filed—and "[a]s a result, Texas's congressional districts may now be redrawn only by the courts". *Rivas* was later consolidated with *ART*, and on July 24, the trial court set a trial date of September 10. The court in Travis County had previously set *Del Rio* and *Cotera* for trial on September 17, but on August 7 it advanced that trial setting to September 10 to coincide with the trial setting in *ART* and *Rivas*. The court in Travis County consolidated the fifth state case, *Connolly v. Perry*,[33] filed July 24, with *Del Rio* and *Cotera*, but later reversed itself in order to preserve the September 10 trial setting.

A number of parties intervened in *ART* and *Rivas*.[34] Among them, Representative

**28.** *Id.* at 825.

**29.** *Id.* at 821.

**30.** *Perry v. Cotera*, No. 03–01–00476–CV (Tex. App.—Austin 2001) (per curiam) (unpublished).

**31.** *Rivas v. Cuellar*, No.2001–33760 (152nd Dist. Ct., Harris County, Tex., filed July 3, 2001).

**32.** See note 7, *supra*.

**33.** *Connolly v. Perry*, No. GN–102250 (98th Dist. Ct., Travis County, Tex., filed July 23, 2001).

**34.** Bill Ratliff, in his official capacity as Lieutenant Governor of the State of Texas; James E. "Pete" Laney, in his official capacity as Speaker of the Texas House of Representatives; Molly Beth Malcolm, in her official capacity as the chairwoman of the Texas Democratic Party; Susan Weddington, in her official capacity as chairman of the Republican Party of Texas; Ken Bentsen, Member of Congress, 25th Texas Congressional District; Gene Green, Member of Congress, 28th Texas Congressional District; Sheila Jackson Lee, Member of Congress, 18th Texas Congressional District; Nicholas V. Lampson, Member of Congress, 9th Texas Congressional District; John Culberson, Member of Congress, 7th Texas Congressional District; Joe Barton, Member of Congress, 6th Texas Congressional District; Tom DeLay, Member of Congress, 22nd Texas Congressional District; Kevin Brady, Member of Congress, 8th Texas Congressional District; Sam Johnson, Member of Congress, 3rd Texas Congressional District;

Bentsen, along with three other members of Congress and others associated with the Democratic Party,[35] filed a plea to the jurisdiction and a plea in abatement on August 22, asserting that the *Del Rio* case had dominant jurisdiction and therefore the *ART* and *Rivas* cases should either be dismissed or abated. On August 28, two other intervenors, Speaker Laney and Chairwoman Malcolm, served pleadings adopting the Bentsen group's plea to the jurisdiction. The plaintiffs [36] in the cases opposed the pleas. On August 31, the trial court overruled the pleas of the Bentsen group and Malcolm, but ordered that Laney's adoption of the plea to the jurisdiction be struck from the record to prevent Laney from appealing and possibly delaying the trial.

On August 10, the Governor and the Secretary of State filed a petition for review of the court of appeals' ruling in *Del Rio* but did not request expedited consideration. On September 4, they also filed a petition for review of the court of appeals' ruling in *Cotera*. On September 5, they filed an "emergency motion" to stay the trial in the Travis County cases, arguing in part that the interlocutory appeal statute automatically stayed the commencement of trial.[37] On the same day, Speaker Laney noticed an appeal from the denial of his plea to the jurisdiction in the Harris County cases,[38] and the next day, September 6, the Bentsen group filed a petition for mandamus and "emergency" request to stay

the trial in the Harris County cases. The "emergency" request, like the "emergency motion", was based in part on the interlocutory appeal statute.

On Friday, September 7, we stayed the trials in both counties, requesting that both district courts remain ready to proceed on further order of this Court, and scheduled argument on all pending matters for September 10 at 10:00 a.m.[39]

## II

Central to resolving all three petitions before us are these three issues: *first*, can a court have subject matter jurisdiction of a claim that was not ripe when the case was filed but became ripe while the case was pending? *second*, does a case filed on a claim that is not yet ripe have dominant jurisdiction over a case filed on the same claim after it has become ripe? and *third*, when did the challenges to the existing congressional districts in the four cases here become ripe? We discuss each in turn.

Our discussion is further complicated by the differences in the views of the parties aligned on the Republican side of the redistricting claims and the parties aligned on the Democratic side. For ease of reference only, and without dismissing the differences on each side, we refer to the Republican group generally as "petitioners", because they join for the most part in the arguments made by the petitioners in

American GI Forum of Texas, Inc.; Phil Sudan; Lester Bellow; Homer C. Guillory; John Bland; Reverend Willie Davis; and Howard County.

**35.** Representative Green, Representative Lee, Representative Lampson, Bellow, Guillory, Bland, and Davis.

**36.** Associated Republicans of Texas, Jeffrey N. Daily, Larry P. Bowles, Henry deForest Ralph, Jr., and Daniel Rivas.

**37.** *See* Tex. Civ. Prac. & Rem.Code § 51.014(b) ("An interlocutory appeal under Subsection (a) shall have the effect of staying the commencement of a trial in the trial court pending resolution of the appeal.").

**38.** *Laney v. Cuellar*, No. 01–01–00758 (Tex. App.—Houston [1st Dist.], notice filed Sept. 5, 2001).

**39.** 44 Tex. Sup.Ct. J. —— (Sept. 7, 2001).

the interlocutory appeals, and we refer to the Democratic group generally as "relators", because they join mostly in the arguments made by the relators in the original mandamus proceeding.

**A**

No one questions that federal constitutional challenges to the existing congressional districts in Texas are now ripe for decision, given that Texas is entitled to two additional seats and no doubt remains that the Legislature will not redistrict. What the parties here dispute is whether a case filed when such challenges were not ripe must be dismissed for want of jurisdiction after it has become ripe.

Ripeness is one of several categories of justiciability.[40] A threshold question is whether federal or state law determines the ripeness of federal constitutional claims like those made in the four pending cases. In determining standing, another justiciability issue,[41] the United States Supreme Court has said that "state courts are not bound to adhere to federal standing requirements."[42] With federal consti-

tutional rights at issue, we have sometimes sought guidance on ripeness issues in more extensively developed federal jurisprudence,[43] but we have done the same with standing issues without ceding the authority of state law.[44] We are inclined to think that ripeness, like standing and other justiciability issues, should be determined by state law, as long as applying state law does not defeat what Professor Wright has called "the uncertainly defined obligation of state courts to provide a remedy for federal wrongs,"[45] but as it applies here at least, we see no difference between our law and federal law.

The Supreme Court has characterized ripeness as "peculiarly a question of timing."[46] Summarizing federal case law, Professor Wright has explained: "Ripeness doctrine is invoked to determine whether a dispute has yet matured to a point that warrants decision. The central concern is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."[47] Ripeness concerns not only whether a court *can* act—

---

**40.** *See* 13 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3529, at 278–279 (2d ed.1984).

**41.** *See* 13A WRIGHT, *supra* note 40, § 3532.1, at 114.

**42.** *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 617, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989) (noting that the constraints of Article III of the U.S. Constitution do not apply to state courts, and citing *Bateman v. Arizona*, 429 U.S. 1302, 1305, 97 S.Ct. 1, 50 L.Ed.2d 32 (Rehnquist, Circuit Justice 1976)).

**43.** See, e.g., *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928–929 (Tex.1998).

**44.** *Williams v. Lara*, —— S.W.3d ——, —— (Tex.2001) (citing *Bateman*); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex.1993).

**45.** 16B WRIGHT, *supra* note 40, § 4023, at 353 (2d ed.1996). *See also Mayhew*, 964 S.W.2d at 929 n. 1 ("While state procedural law generally determines the manner in which a federal question is to be presented in state court, that is not the case if federal substantive law defines its own procedural matrix.") (citing LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW § 3–24, at 166 (2d ed.1988)).

**46.** *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974).

**47.** 13A WRIGHT, *supra* note 40, § 3532, at 104 (2001 Supp.) (cited and quoted in *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998), and *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–581, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)).

whether it has jurisdiction—but prudentially, whether it *should*.[48] In assessing ripeness, the Supreme Court has said, a court is required "to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."[49] The Supreme Court has indicated that ripeness should be determined at the time of adjudication.[50] As Professor Wright has explained: "Ripeness should be decided on the basis of all the information available to the court. Intervening events that occur after decision in lower courts should be included, just as must be done with questions of mootness."[51] Petitioners argue that federal law permits the consideration of post-filing circumstances only in determining prudential ripeness, not in determining the ripeness required for jurisdiction, but we cannot find that distinction in the cases. Neither did the United States District Court for the Eastern District of Texas in rejecting the argument in three of the pending federal congressional redistricting cases "that subsequent events cannot ripen a dispute if the dispute was unripe when the case was filed."[52]

These principles of federal law are consistent with our own ripeness jurisprudence. In *Patterson v. Planned Parenthood*, we stated that "the ripeness doctrine serves to avoid premature adjudication."[53] Quoting Professor Wright, we stated that "[r]ipeness thus focuses on whether the case involves 'uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'"[54] Ripeness, we said, involves both jurisdictional and prudential concerns.[55] We did not suggest in *Patterson* that the ripeness required for jurisdiction must be determined only as of the date a case is filed; on the contrary, we considered evidence of circumstances after that date. The issue was whether a state appropriation rider conflicted with federal regulations. Testimony at trial reflected that neither the state agency with responsibility for the funds nor the federal agency with responsibility for the regulations

**48.** *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 733 n. 7, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997); *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993); *Buckley v. Valeo*, 424 U.S. 1, 114, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *Regional Rail Reorganization Act Cases*, 419 U.S. at 138, 95 S.Ct. 335; *see* 13A WRIGHT, *supra* note. 40, § 3532.1, at 114–115.

**49.** *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

**50.** *E.g.*, *Buckley*, 424 U.S. at 113–114, 96 S.Ct. 612 (considering events after the court of appeals' decision); *Regional Rail Reorganization Act Cases*, 419 U.S. at 140, 95 S.Ct. 335 (stating that ripeness is governed by the present situation rather than the one existing when the trial court ruled).

**51.** 13A WRIGHT, *supra* note 40, § 3532.1, at 136–137. *But see* 15 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 101.74 (3d ed.2000) (stating without citing authority:

"The burden is on the plaintiff to allege in the complaint sufficient facts to establish the court's jurisdiction. The court will review the issue for ripeness as of the time the litigation is commenced. The matter must have been ripe for review at that time; subsequent ripening of the issue while the matter is under the court's consideration on a jurisdictional motion to dismiss is not sufficient to confer the court with jurisdiction that did not originally exist when the action was initiated.").

**52.** *Balderas v. Texas*, Civil No. 6:01–CV–158 (E.D. Tex., order filed July 23, 2001); *Mayfield v. Texas*, Civil No. 6:01–CV–218 (E.D. Tex., order filed July 23, 2001); *Manley v. Texas*, Civil No. 6:01–CV–231 (E.D. Tex., filed July 23, 2001).

**53.** 971 S.W.2d 439, 442 (Tex.1998).

**54.** *Id.* (quoting 13 WRIGHT, *supra* note 40, § 3532, at 112).

**55.** *Id.* at 442–443.

had yet determined what actions it would take.[56] The trial court held that the rider was unconstitutional.[57] On direct appeal, the plaintiff did not argue that circumstances had changed. We reversed, concluding that "[b]ecause its alleged injury *remains* contingent, [the plaintiff's] claim *is not yet* ripe for review." [58]

Petitioners point to our statement in *Waco Independent School District v. Gibson*[59] that "[u]nder the ripeness doctrine, we consider whether, *at the time a lawsuit is filed*, the facts are sufficiently developed 'so that an injury has occurred or is likely to occur, rather than being contingent or remote.' "[60] But that statement must be taken in the context of that case, where the only issue raised was ripeness at the time the case was filed. The plaintiffs in *Gibson* sued to enjoin a school district from implementing "a student-promotion policy requiring students in first through eighth grades to obtain a satisfactory score on one of two standardized assessment tests to advance to the next grade." [61] The trial court dismissed these claims on the pleadings because of the plaintiffs' failure to exhaust administrative remedies, but the court of appeals reversed.[62] We held that the school district could challenge on appeal for the first time the lack of ripeness of the plaintiffs' claims, and that those claims, as pleaded, were not ripe. Because of the procedural posture of the case, our decision was necessarily based on the plaintiffs' pleadings. We did not say

that the time of filing was the only period ever relevant to ripeness.

■ *Patterson* and *Gibson* both support the proposition that a case which is not ripe when filed *may* be dismissed, especially if the likelihood that it will soon become ripe cannot be demonstrated. The district court could properly have dismissed *Del Rio* for lack of ripeness while the Legislature was still considering redistricting during the regular session, just as the United States District Courts for the Eastern and Western Districts of Texas dismissed the first three congressional redistricting cases for lack of ripeness.[63] But just as a case may become moot after it is filed, it may also ripen. After the claims in *Del Rio* ripened, the district court was not required to dismiss the case simply because it was filed prematurely. The mischief of a contrary rule is readily apparent: a party could delay raising the issue, even until appeal, and still insist upon dismissal for want of jurisdiction at the time the case was filed, even though the issues had long since matured and been fully litigated.

Under federal law, Professor Wright concludes:

Ripeness cases have generated a functional approach that directly weighs the importance of the interest advanced; the extent of the injury or risk; the difficulty of deciding the substantive is-

---

**56.** *Id.* at 441 (explaining that witness testified at trial that the state agency "had not yet made any final or official decisions" and "was considering" two plans).

**57.** *Id.*

**58.** *Id.* at 444 (emphasis added).

**59.** 22 S.W.3d 849 (Tex.2000).

**60.** *Id.* at 851–852 (quoting *Patterson*, 971 S.W.2d at 442) (emphasis in original).

**61.** *Id.* at 850.

**62.** *Id.* at 851.

**63.** *Mayfield v. Texas*, No. 2:00–CV–268 (E.D. Tex., order filed Apr. 26, 2001); *Lee v. Texas*, No. 6:01–CV–98 (E.D. Tex., order filed Apr. 26, 2001); *Associated Republicans of Texas v. Texas*, No. W01–CA–083 (W.D. Tex., order filed May 8, 2001).

sues and the allied need for specific factual illumination; and the sensitivity of the issues in relation to future cases, the states, and other branches of the federal government.[64]

The ripeness doctrine is no less functional under Texas law.

■ Accordingly, we hold that a claim's lack of ripeness when filed is not a jurisdictional infirmity requiring dismissal if the case has matured.

## B

The challenges to the State's congressional districts in all four cases set for trial are now ripe, as all parties agree. Adjudication *need* not, indeed *must* not, be delayed further. The parties dispute whether *Del Rio, ART,* and *Cotera* were ripe when filed, but relators argue that even if *Del Rio* was filed before the issues ripened, it should be tried first because it was filed first. We disagree.

■ It is not unusual for parties with a choice of forums to prefer one over another, and when more than one party can sue on the same subject matter, they may choose difference courts. As a rule, when cases involving the same subject matter are brought in different courts, the court with the first-filed case has dominant jurisdiction and should proceed, and the other cases should abate.[65] The obvious reasons for abatement, as we explained in *Wyatt v. Shaw Plumbing Co.,* are the conservation of judicial resources,[66] avoidance of delay,[67] "comity, convenience, and the

necessity for an orderly procedure in the trial of contested issues"[68]—or as we put it in *Cleveland v. Ward,* to "prevent races from court to court by vigilant counsel".[69] The first-filed rule also has several justifications. The jurisprudential reason for the rule is that once a matter is before a court of competent jurisdiction, "its action must necessarily be exclusive" because it is "impossible that two courts can, at the same time, possess the power to make a final determination of the same controversy between the same parties."[70] A pragmatic justification for the first-filed rule is efficiency: proceedings earlier begun may be expected to be earlier concluded. A further justification is simple fairness: in a race to the courthouse, the winner's suit should have dominant jurisdiction. The first-filed rule admits of exceptions when its justifications fail, as when the first court does not have the full matter before it, or when conferring dominant jurisdiction on the first court will delay or even prevent a prompt and full adjudication, or when the race to the courthouse was unfairly run. Thus, in *Wyatt* we stated that the first-filed rule would not apply if a party's conduct estops him from asserting dominant jurisdiction, if joinder of parties is infeasible or impossible, or if the plaintiff in the first case is not intent on prosecuting his claims. A party who files suit on manifestly unripe claims, merely to win a race to the courthouse, falls within the first exception. Having filed claims that clearly cannot be prosecuted, he should be estopped from arguing dominant jurisdic-

---

64. 13A WRIGHT, *supra* note 40, § 3532.1, at 130.

65. *Wyatt v. Shaw Plumbing Co.,* 760 S.W.2d 245, 247–248 (Tex.1988); *Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex.1974); *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063, 1070 (1926).

66. *Wyatt,* 760 S.W.2d at 246–247.

67. *Id.*

68. *Id.* at 248.

69. *Cleveland,* 285 S.W. at 1071.

70. *Id.* (citing 1 FREEMAN ON JUDGMENTS § 335 (5th ed.)).

tion. Indeed, as we have just explained, such a case might well be dismissed. To apply the rule in that case would encourage the intentional filing of unripe claims, wasting the court's and parties' resources. But even if a plaintiff sues on unripe claims in good faith, intending to prosecute them, we think the first-filed rule should not apply. Conferring dominant jurisdiction on a court with such a case does nothing to promote a prompt adjudication because unmatured claims cannot be prosecuted regardless of the plaintiff's intent. And a party who jumps the gun can hardly argue that he should win the race because he meant well. By the same token, however, we see no reason to prohibit a party who files a ripe claim, either in a new suit or by amended pleading in an existing suit, from proceeding first simply because he earlier filed the same claim before it was ripe. In such circumstances the amended pleading should be treated for purposes of determining dominant jurisdiction as a new suit as of the time it is filed, but not relating back to the commencement of the action.[71]

■ Consistent with the justifications for the first-filed rule, we hold that dominant jurisdiction cannot be conferred on a court by the filing of a claim, either by an original or amended pleading, unless the claim was ripe when the filing was made.

### C

■ From what we have concluded thus far, the court with the first case that was ripe when filed has dominant jurisdiction and should proceed immediately to trial, and the other cases should be abated.

We must now determine which case that is. As we have said already, "[r]ipeness ... focuses on whether the case involves 'uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all,' "[72] and requires that we "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." [73]

■ The claims made in the four cases set for trial that congressional districts must be judicially redrawn have two basic predicates. One relates to the structure of the districts. The claimants allege that existing districts are too few, that Texas should have two more than the thirty now in place. The claimants also allege that the population of the districts varies more than the United States Constitution permits. Even assuming that either allegation could be proved without the decennial census, the policy of Article I, Section 2 of the Constitution is that the determination be based on the census. As the Supreme Court stated in *Reynolds v. Sims:*

> Limitations on the frequency of reapportionment are justified by the need for stability and continuity in the organization of the legislative system, although undoubtedly reapportioning no more frequently than every 10 years leads to some imbalance in the population of districts toward the end of the decennial period and also to the development of resistance to change on the part of some incumbent legislators.[74]

Thus, whether existing districts are improperly structured depends on the 2000 census data. Preliminary data showing

---

71. *Cf. Leach v. Brown,* 292 S.W.2d 329, 331 (Tex.1956) (treating an amended petition as a new action in certain circumstances).

72. *Patterson,* 971 S.W.2d at 442 (quoting 13 WRIGHT, *supra* note 40, § 3532, at 112).

73. *Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

74. 377 U.S. 533, 583, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

that Texas is entitled to two additional seats was not released until December 28, 2000, and while many predicted that that would be the result, as the Texas Legislative Council did early in 2000, it could not be established without official census data. More detailed census data necessary to draw districts with roughly equal populations were not released until March 12, 2001. Thus, the *Del Rio* case was not ripe when it was filed on December 27, 2000, because the information necessary to prove the claims asserted and obtain a remedy did not exist at that time. Any attempt to redraw congressional districts prior to March 12, 2001, could only have been based on pure speculation. We note that the federal courts dismissed all three of their cases filed before that date.[75]

The second basic predicate of the claims for judicial relief is that legislative relief is not forthcoming. Redistricting, as we have noted above, " 'is primarily a matter for legislative consideration and determination.' " [76] Most often it is a highly charged political enterprise into which courts must not intrude except as a last resort. Determining when that day has arrived is fraught with uncertainty, as the cases before us illustrate. The plaintiffs in *Del Rio* alleged nearly two weeks before the Legislature's regular session opened that there was "reason to believe" that it would deadlock on redistricting issues.

That may have been a reasonable prediction at the time despite the fact that the Legislature did not deadlock on congressional redistricting in 1971, 1981, or 1991. On May 8, the plaintiffs in *Del Rio* amended their petition to allege that legislative inaction was "a near-certainty" because of impending deadlines set by Senate and House rules. Yet that same day the federal court in its first *ART* case concluded that there was "no threat" that the Legislature would fail to act before the next election cycle and dismissed the case for lack of ripeness. [77] Indeed, both houses continued to suspend self-imposed deadlines. For example, on May 11 the House suspended not only its own rules but the requirement of the Texas Constitution that bills be read on three different days before passage,[78] allowing a large number of bills to pass.[79] That same day the Senate, too, suspended its rules to allow the introduction of a new bill.[80] Action within the regular session was certainly far less likely on May 24 when *ART* was filed, although it remained a possibility if a plan could be agreed on. Even on May 26, two days before the regular session was to adjourn, the Governor would say only that "a special session may be necessary". At least as far as legislative rules were concerned, passage was still possible. On May 27, the House suspended all its rules to take up eighteen conference committee reports filed after the stated deadline.[81] When

75. See notes 17 and 18, *supra*.

76. *White v. Weiser*, 412 U.S. 783, 794, 93 S.Ct. 2348, 37 L.Ed.2d 335 (1973) (quoting *Reynolds v. Sims*, 377 U.S. 533, 586, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964)).

77. *Associated Republicans of Texas v. Texas,* No. W01–CA–083 (W.D. Tex., order filed May 8, 2001) (memorandum and order at 6).

78. Tex. Const. art. III, § 32 ("No bill shall have the force of a law, until it has been read on three several days in each House, and free

discussion allowed thereon; but four-fifths of the House, in which the bill may be pending, may suspend this rule, the yeas and nays being taken on the question of suspension, and entered upon the journals.").

79. *See* H.J. of Tex., 77th Leg., R.S. 3019–3098 (2001).

80. *See* S.J. of Tex., 77th Leg., R.S.1964 (2001).

81. *See* H.J. of Tex., 77th Leg., R.S. 5118–5147 (2001).

*Cotera* was filed on May 31, three days after the regular session adjourned, there was some reason to think that a redistricting plan might be adopted in a special legislative session, as was done in 1991, 1981, and 1971.

While the ripeness of a claim for judicial redistricting requires a showing of legislative inaction, the difficulties with such a showing are formidable. First, no one can speak with authority about what the Legislature will and will not do. That body can speak only through a vote of its members, who may themselves change positions. Second, predictions about the probable course of the legislative process are notoriously unreliable, as anyone remotely familiar with the process well knows. Third, courts should not encourage parties to predict, much less prove the improbability of, legislative inaction on the important matter of redistricting. Every encouragement, at least from the judiciary, should be toward adoption of a legislative solution. Fourth, parties should not be encouraged to enlist participants in the legislative process to show that claims are ripe or not ripe. No person involved in the legislative process should be encouraged to take or defer action in order to give an appearance that a case is or is not ripe. We do not suggest that any of these problems have arisen with the pending cases; we list them only as potential difficulties in proving legislative inaction. Finally, courts—federal and state—cannot defer so long in hopes of legislative action that the election process is disrupted.

■ The only "hard and fast" deadline in the chronology of events was the one set by the Texas Constitution: that the Legis-

lature adjourn *sine die* not more than 140 days after its regular session commenced.[82] Enactment of legislation remained within the Legislature's power until hours before adjournment, and thus inaction remained uncertain and contingent until the end of the session. Redistricting issues were not fit for judicial determination until the Legislature had its full regular session to discharge its redistricting responsibility. Once the regular session adjourned, a reasonable opportunity remained for fully litigating redistricting issues. To delay judicial proceedings further in case a special session might be called would have increased the threat of disruption to the election cycle. In sum, applying settled rules of ripeness, we conclude that the constitutional challenges to congressional districting became ripe at the end of the regular session, but not before.

■ Petitioners argue that a third factor should also be considered in determining ripeness in this context—the imminence of disruption to the election cycle. We agree that this is a relevant concern, although it is certainly no easier to assess than the prospect of legislative inaction. According to the United States Supreme Court, once a state legislature has had a chance to resolve redistricting issues, state courts must have a reasonable opportunity to resolve disputes, followed by federal courts.[83] In Texas, any state solution requires preclearance by the United States Department of Justice under the Voting Rights Act,[84] a process that often takes months. The filing period for candidates begins in early December,[85] and the party primaries are in March.[86] Ideally, state litigation should therefore be completed

---

**82.** Tex. Const. art. III, § 24(b).

**83.** *Growe v. Emison*, 507 U.S. 25, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993).

**84.** *See* 42 U.S.C. § 1973c.

**85.** Tex. Elec.Code § 172.023.

**86.** *Id.* § 41.007.

well before October, but how much earlier it should commence in order to meet that deadline is uncertain. The pending cases illustrate that the risk of disruption to the election cycle increases dramatically if commencement of active litigation is delayed after the conclusion of the Legislature's regular session.

■ For the future, we think that the difficulties in determining the ripeness of such challenges are best resolved by a bright-line rule—a set time after which judicial proceedings may be commenced and actively prosecuted, even if legislative action remains a possibility. The most appropriate deadline is the adjournment of the Legislature's regular session. Even though it is quite possible that the Legislature will adopt a redistricting plan afterward in special session, as it has often done before, to preclude commencement of judicial proceedings any longer and still allow for a trial, appeals, preclearance under the Voting Rights Act,[87] and federal court proceedings, presents an unjustifiable risk of disruption to the election cycle. It may be that in other states a bright-line rule would have less to commend it,[88] but in Texas, with regular legislative sessions being relatively short, special sessions being subject to the will of the Governor, the absence of legislated procedures to streamline judicial proceedings to prevent problems such as those now before us, and the limitations on this Court's review of factual disputes like those invariably raised in a weighing of circumstances, a bright-line rule of ripeness based on *sine die* adjournment of the regular legislative session appears to best resolve the attendant problems. Of course, should the Legislature adopt a redistricting plan in special

session, the courts should defer to that plan if it is legal. But otherwise the court action should proceed to trial and appeal so that a final decision can be made in the state system in time for any review in the federal courts and under the Voting Rights Act.

■ For this case, however, applying settled ripeness law, we hold that the constitutional challenges to congressional districts made in the cases awaiting trial were not ripe until the regular session of the Legislature after the decennial census adjourned. The first case filed after that date was *Cotera,* and an amended petition in *Del Rio* was filed the same day. The district court in Travis County therefore has dominant jurisdiction.

### III

It remains for us to determine what relief should be granted in the three matters before us. Petitioners in No. 01–0728 request that we reverse the court of appeals in *Del Rio* and dismiss that case for want of jurisdiction. That request is mooted by our conclusion that the trial court has jurisdiction in *Del Rio,* and accordingly we dismiss the petition for review. Petitioners in No. 01–0810 request that we reverse the court of appeals's dismissal of the appeal related to *Cotera* and remand the case to that court for consideration of petitioners' arguments that the trial court lacks jurisdiction. That request, too, is mooted by our analysis above, and we likewise dismiss that petition for review. The parties have questioned whether trial is stayed by section 51.014(b) of the Texas Civil Practice & Remedies Code because of the pendency of interlocutory appeals in this Court and in

---

**87.** *See* 42 U.S.C. § 1973c.

**88.** *Cf. Carstens v. Lamm,* 543 F.Supp. 68 (D.Colo.1982) (attempting to determine when legislative proceedings had reached an impasse).

the First Court of Appeals in Houston. Because today's decision moots the issues in all such appeals, the statutory issue is removed.

 Relators request that we grant mandamus relief directing the trial court in Harris County to abate proceedings in *ART* and *Rivas*, the two cases pending there. Petitioners argue that relators' petition for mandamus, like Weddington's filed July 24, should be denied because it was not first presented to the court of appeals.[89] But we are more than seven weeks closer to the federal court's October 1 deadline for state-court action than we were when Weddington's petition was filed. Time has simply run out. Under these circumstances, we must consider relators' petition in the first instance.[90]

 To obtain relief, relators must show that the trial court clearly abused its discretion and that they have no adequate remedy by appeal.[91] Our determination that the *Cotera* court has dominant jurisdiction is based on settled principles, even though their proper application may not have been clear. As we have explained, the circumstances on which the claims that have been asserted are predicated were not sufficiently developed until the regular session of the Legislature adjourned, but they did not remain contingent until the Governor's final announcement that he would not convene a special session. Under the law, *ART* and *Rivas* must be abated, and the district court's failure to follow that law, even though its application was uncertain, was a clear abuse of discretion. Because "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts,"[92] a trial court's "erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion."[93]

 We stated in *Walker v. Packer* that an appellate remedy is inadequate, justifying issuance of mandamus relief, " 'when parties stand to lose their substantial rights.' "[94] In the current circumstances, further confusion or delay in the trial of the pending challenges to congressional districting poses the very real threat that the parties will not be able to obtain a decision in the state courts that is final on appeal before the October 1 deadline set by the federal courts. Although counsel assured us at oral argument that they and the two district courts involved have cooperated in an effort to conduct two trials of the same issues, we think the inefficiency of such an approach and the uncertainty that will attend two appeals and a final appeal to this Court pose an intolerable risk to completing the process within the limited time remaining. The Supreme Court has recognized that the right of a state's citizens to have districts drawn by state institutions is so substantial that federal courts must reasonably accommodate the state process and defer to a state solution.[95] We believe that protection of this right necessitates the issuance of mandamus relief here.

---

89. 44 Tex. Sup.Ct. J. 1056 (Aug. 1, 2001) (citing Tex.R.App. P. 52.3(e)).

90. *Republican Party of Texas v. Dietz*, 940 S.W.2d 86, 93–94 (Tex.1997); *Sears v. Bayoud*, 786 S.W.2d 248, 249–250 (Tex.1990).

91. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992).

92. *Id.* 840.

93. *Huie v. DeShazo*, 922 S.W.2d 920, 927–928 (Tex.1996).

94. *Walker*, 827 S.W.2d at 842 (quoting *Iley v. Hughes*, 158 Tex. 362, 311 S.W.2d 648, 652 (1958)).

95. *Growe v. Emison*, 507 U.S. 25, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993).

Furthermore, in *CSR Ltd. v. Link,* we recognized that exceptional circumstances may make a right of appeal inadequate.[96] The circumstances presented here clearly fall within that category. The importance of achieving a decision of the districting claims that is final on appeal by the deadline set by the federal court and in time for review under the Voting Rights Act, all so as to minimize the risk of disruption to the impending election cycle, makes the issuance of mandamus relief not only appropriate but imperative.

 Finally, in *Curtis v. Gibbs,* we held that mandamus is appropriate to resolve disputes over dominant jurisdiction.[97] In *Abor v. Black,* we declined to grant mandamus relief directing a court to abate a case in deference to another court's dominant jurisdiction absent "any order [of the former court] which actively interferes with the exercise of jurisdiction" by the court with dominant jurisdiction.[98] Even under this more restrictive test, relators do not have an adequate remedy by appeal. The district court's order in *ART* and *Rivas* setting those cases for trial at the very same time that Del Rio and *Cotera* are set for trial actively interferes with the dominant jurisdiction in the latter cases. We recognize, of course, that trial was first set in Harris County on September 10, and that the district court in Travis County later advanced the trial setting to the same date, but as we have concluded, the court in Travis County has dominant jurisdiction and should proceed first. It is unimportant to the issue of dominant jurisdiction which court first set an earlier trial date.

"Courts are erected to settle controversies, not to multiply them." [99] Accordingly, we grant the relators' request that the district court in Harris County be directed to abate proceedings in *ART* and *Rivas.* We are confident that the district court will promptly comply, and our writ will issue only if it does not.

Justice BAKER issued a dissenting opinion.

Justice BAKER, dissenting.

These redistricting cases present important questions for our State. But the importance of the questions does not permit the Court to first ignore, and then refashion, two long-standing areas of Texas jurisprudence. "Under our form of government, the legitimacy of the judiciary rests in large part upon a stable and predictable decisionmaking process that differs dramatically from that properly employed by the political branches of government." *Weiner v. Wasson,* 900 S.W.2d 316, 320 (Tex.1995). Regrettably, the Court once again fails to adhere to the stare-decisis doctrine that is the cornerstone of our judicial system—simply because the result it desires cannot be achieved by following established precedent. I dissent.

## I. THE DEL RIO CASE

*Del Rio* is an interlocutory appeal from the trial court's order denying the State defendants' plea to the jurisdiction, which alleged that the *Del Rio* plaintiffs' claims were not ripe for review. The court of appeals affirmed the trial court's order, and there was no dissent. 53 S.W.3d 818

---

**96.** 925 S.W.2d 591, 596–597 (Tex.1996).

**97.** 511 S.W.2d 263, 268 (Tex.1974).

**98.** 695 S.W.2d 564, 567 (Tex.1985); *accord Hall v. Lawlis,* 907 S.W.2d 493, 495 (Tex. 1995) (per curiam).

**99.** *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063, 1071 (1926).

(Tex.App.—Austin 2001). Accordingly, this Court has jurisdiction to review the appeal only if it determines that the court of appeals held differently from another court of appeals', or this Court's, prior decision on a question of law material to the decision of the case. *See* TEX. GOV'T CODE §§ 22.001(a)(2), 22.225(c); *Coastal Corp. v. Garza,* 979 S.W.2d 318, 319 (Tex. 1998).

Here, the Court has conflicts jurisdiction to review the court of appeals' decision. By granting Bentsen mandamus and avoiding a conflicts-jurisdiction analysis, the Court turns Texas' ripeness-doctrine jurisprudence on its head.

### A. APPLICABLE LAW

#### 1. Texas' Ripeness Doctrine

Ripeness is a threshold issue that implicates subject-matter jurisdiction. *Patterson v. Planned Parenthood,* 971 S.W.2d 439, 442 (Tex.1998). The ripeness doctrine examines when claims may be brought and asks, "whether, at the time a lawsuit is filed, the facts are sufficiently developed 'so that an injury has occurred or is likely to occur, rather than being contingent or remote.'" *Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 851–52 (Tex.2000); *see also Patterson,* 971 S.W.2d at 442.

The ripeness doctrine allows courts to avoid premature adjudication and serves constitutional interests in prohibiting advisory opinions. *Gibson,* 22 S.W.3d at 852. If the plaintiff's injury is not concrete and depends on contingent or hypothetical facts, the trial court does not have jurisdiction to hear the dispute. *Gibson,* 22 S.W.3d at 852. To determine if the plaintiff's claims were ripe or if the trial court should have dismissed the suit for want of jurisdiction, the appellate court must look to the facts and evidence existing when the suit was filed. *Gibson,* 22 S.W.3d at 851–

52. If a plaintiff amends her petition while the case is pending to demonstrate the claims' ripeness, the facts and evidence asserted in the amended petition must have existed when the plaintiff sued. *See Gibson,* 22 S.W.3d at 853.

#### 2. Appellate Review

Our appellate rules provide that while an appeal from an interlocutory order is pending, a trial court "must not make an order that ... interferes with or impairs the jurisdiction of the appellate court *or effectiveness of any relief sought* or that may be granted on appeal." TEX.R.APP. P. 29.5(b) (emphasis added). This rule is designed to prevent an "end run" around an interlocutory appeal. *See In re M.M.O.,* 981 S.W.2d 72, 79 (Tex.App.—San Antonio 1998, no pet.); *St. Louis S.W. Ry. Co. v. Voluntary Purchasing Groups, Inc.,* 929 S.W.2d 25, 33 (Tex.App.—Texarkana 1996, no writ); *Cobb v. Thurmond,* 899 S.W.2d 18, 19 (Tex.App.—San Antonio 1995, writ denied).

Additionally, it is well-settled in Texas that an appellate court's review is confined to the record in the trial court when the trial court acted. *See, e.g., Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 52 n. 7 (Tex.1998); *University of Tex. v. Morris,* 162 Tex. 60, 344 S.W.2d 426, 429 (1961); *Monsanto v. Davis,* 25 S.W.3d 773, 781 (Tex.App.—Waco 2000, pet. dism'd w.o.j.).

### B. ANALYSIS

After discussing the ripeness-doctrine principles this Court announced in *Gibson* and *Patterson,* the court of appeals concluded that reviewing the trial court's order denying the jurisdictional plea was "made easier by the fact that the *Del Rio* case has been consolidated and merged with the *Cotera* case which when filed on May 31 was ripe on its face." 53 S.W.3d

at 824. The court of appeals further stated that it did not have to examine the trial court's decision in detail because *Del Rio* was consolidated with *Cotera*, a suit that the court of appeals determined asserted claims that were "clearly ripe." 53 S.W.3d at 825. But the court of appeals' reliance on facts that occurred after *Del Rio* was filed, and were not before the trial court when it denied the plea, conflicts with *Gibson*.

In *Gibson*, the court of appeals concluded that it could not decide the school district's ripeness challenge because it was raised for the first time on appeal. *Gibson*, 22 S.W.3d at 850. After recognizing that subject-matter jurisdiction cannot be waived and may be raised for the first time on appeal, we analyzed the ripeness issue. We specifically reiterated that in determining if a case is ripe, we consider "whether, *at the time a lawsuit is filed*, the facts are sufficiently developed." *Gibson*, 22 S.W.3d at 851–52 (emphasis in original). Additionally, we noted that the Court may review the entire record to ascertain if any evidence supports the trial court's subject-matter jurisdiction. *Gibson*, 22 S.W.3d at 853. But we further determined that our decision still turns on the facts and evidence existing *"when the plaintiffs sued."* *Gibson*, 22 S.W.3d at 853 (emphasis in original). For example, the Court considered the plaintiffs' argument that an " 'impact's coming' " in response to the school district's assertion that its policy had not impacted any students *"when* the [plaintiffs] filed suit." *Gibson*, 22 S.W.3d at 852–53 (emphasis added). After reviewing the evidence and testimony before the trial court, we held that the trial court did not have jurisdiction because the plaintiffs' claims were not ripe. *Gibson*, 22 S.W.3d at 853.

Notably, the *Gibson* dissent argued that the Court should have given the plaintiffs an opportunity to amend their pleadings rather than relying solely on the original petition. *Gibson*, 22 S.W.3d at 856 (Hecht, J. dissenting). The dissent also urged that the Court should have considered whether the plaintiffs could have adduced evidence to demonstrate their claims' ripeness when their case was developed further in the trial court. *Gibson*, 22 S.W.3d at 856. But the majority rejected the dissent's position when it emphatically held that the facts existing *"when the plaintiffs sued"* must show the claims are ripe. *Gibson*, 22 S.W.3d at 853 (emphasis in original).

Here, the court of appeals' analysis and the legal principles it applied to conclude that the *Del Rio* plaintiffs' claims were ripe would operate to overrule *Gibson* had we issued the same decision. *See Coastal Corp.*, 979 S.W.2d at 321. Had the court of appeals properly applied *Gibson*, it would have confined reviewing the trial court's order to the facts and evidence existing when the *Del Rio* plaintiffs filed suit. *See Gibson*, 22 S.W.3d at 851. And, if it had done so, the court of appeals could have reached only one conclusion—that the *Del Rio* plaintiffs' claims were not ripe.

The *Del Rio* plaintiffs sued on December 27, 2000, before the census data was released and before the Legislature adjourned *sine die*. A case involving congressional redistricting could not have been ripe at least until these events occurred. 53 S.W.3d at 822 on December 27, 2000, the alleged harm was not direct and immediate; it was merely conjectural, hypothetical, and remote. *See Gibson*, 22 S.W.3d at 852.

In addition to its obvious conflict with *Gibson*, the court of appeals' conclusion that *Del Rio* is ripe is based on its improperly considering the order consolidating *Del Rio* and *Cotera*. Here, the trial court's consolidation order clearly interfered with and impaired the effectiveness

of the relief the *Del Rio* State defendants sought. *See* Tex.R.App. P. 29.5(b); *In re M.M.O.*, 981 S.W.2d at 79; *St. Louis S.W. Ry. Co.*, 929 S.W.2d at 33; *Cobb*, 899 S.W.2d at 19. But for the consolidation order, the court of appeals would have had to apply Texas' ripeness doctrine to conclude that *Del Rio* was not ripe.

Finally, the court of appeals' opinion disregards Texas' rule that an appellate court's review is confined to the record before the trial court when the trial court acted. *See, e.g., Owens–Corning Fiberglas Corp.*, 972 S.W.2d at 52 n. 7; *Morris*, 344 S.W.2d at 429; *Monsanto*, 25 S.W.3d at 781. Here, the court of appeals concluded that *Del Rio* was ripe, relying on *Del Rio's* and *Cotera's* consolidation. This event not only occurred after *Del Rio* filed her petition, but it also occurred after the trial court denied the plea to the jurisdiction and after the State defendants perfected their interlocutory appeal. Thus, the court of appeals erroneously looked outside the record that was before the trial court when it denied the plea to the jurisdiction.

### C. Conclusion

The court of appeals' decision conflicts with Texas' ripeness-doctrine jurisprudence and, in particular, the analysis and legal principles we applied in *Gibson*. Under *Gibson*, the court of appeals should have reversed the trial court's order denying the jurisdictional plea and dismissed the suit for want of jurisdiction.

## II. THE COTERA CASE

After the *Cotera* plaintiffs sued on May 31, 2001, the State defendants filed their plea to the jurisdiction, contending that the claims were not ripe because the Governor could still call a special session. After the trial court consolidated *Del Rio* and *Cotera*, it denied this plea to the jurisdiction on August 2, 2001. The State defen-

dants appealed this order. Then, once the court of appeals issued its *Del Rio* decision, the *Cotera* plaintiffs filed a "motion to expedite and motion for summary affirmance" in the court of appeals. The *Cotera* plaintiffs argued that the court's *Del Rio* decision specifically answered Cotera's jurisdictional issue. On August 31, 2001, the court of appeals, without explanation, dismissed the *Cotera* appeal for want of jurisdiction.

This Court has jurisdiction to determine whether a court of appeals correctly decided its jurisdiction over an interlocutory appeal. *Qwest Communications Corp. v. AT & T Corp.*, 24 S.W.3d 334, 335–36 (Tex.2000). Here, the *Cotera* State defendants appealed the trial court's interlocutory order denying their pleas to the jurisdiction. The court of appeals had jurisdiction to consider these appeals under Texas Civil Practice & Remedies Code section 51.014(a)(8). Because the court of appeals had jurisdiction, it should have decided *Cotera* on the merits.

## III. THE BENTSEN MANDAMUS

The Court's decision to grant mandamus here is a radical departure from our dominant-jurisdiction and mandamus jurisprudence. Mandamus should not issue because this case is not unique or significantly different than those expressing our well-established legal principles in these areas.

### A. Applicable Law

Mandamus is an extraordinary remedy, available only when a trial court clearly abuses its discretion and when there is no adequate remedy on appeal. *See Walker v. Packer*, 827 S.W.2d 833, 840–44 (Tex. 1992). Reviewing courts must not issue mandamus to control or correct a trial court's incidental ruling when the harm, if

any, can be remedied on appeal. *See, e.g., Canadian Helicopters Ltd. v. Wittig,* 876 S.W.2d 304, 306 (Tex.1994); *Walker,* 827 S.W.2d at 840.

The general common-law rule in Texas is that the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts. *Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex.1974). For sixteen years, this Court has recognized that appeal is an adequate means for reviewing dominant-jurisdiction questions. *Abor v. Black,* 695 S.W.2d 564, 566 (Tex. 1985). In *Abor,* the Court distinguished *Curtis,* a dominant-jurisdiction case in which this Court granted mandamus relief, by pointing out that in *Curtis* there was an injunction from one court precluding the other court from proceeding. *Abor,* 695 S.W.2d at 567. We held that because no injunction had been granted in *Abor* and no order actively interfered with the other court's jurisdiction, mandamus relief should be denied. *Abor,* 695 S.W.2d at 567.

Accordingly, the *Abor* rule applies, and mandamus is unavailable to review a denial of a plea in abatement based on the pendency of a first-filed action, "unless the courts were directly interfering with each other by issuing conflicting orders or injunctions." *Hall v. Lawlis,* 907 S.W.2d 493, 494 (Tex.1995) (relying on *Abor,* 695 S.W.2d at 567). The interference may not be incidental, but must rise to the level that it interferes with the other court's exercise of its jurisdiction. *Abor,* 695 S.W.2d at 567.

Texas courts of appeals have steadfastly applied the *Abor* rule, recognizing that a court cannot grant mandamus relief when both courts can proceed with their separate actions and one court has not attempted to divest the other of jurisdiction. *See, e.g., In re Ramsey,* 28 S.W.3d 58, 63 (Tex. App.—Texarkana 2000, orig. proceeding);

*In re Rio Grande Valley Gas Co.,* 987 S.W.2d 167, 172–73 (Tex.App.—Corpus Christi 1999, orig. proceeding); *Texas Commerce Bank, N.A. v. Prohl,* 824 S.W.2d 228, 230 (Tex.App.—San Antonio 1992, orig. proceeding). As a result, courts have granted mandamus relief only when "there is a conflict in jurisdiction between courts of coordinate jurisdiction and the proceedings in the trial court first taking jurisdiction have been improperly enjoined by the second court, or the first court has refused to proceed to trial." *Dallas Fire Ins. Co. v. Davis,* 893 S.W.2d 288, 294 (Tex.App.—Fort Worth 1995, orig. proceeding); *see also Allstate Ins. Co. v. Garcia,* 822 S.W.2d 348, 349 (Tex. App.—San Antonio 1992, orig. proceeding); *Trapnell v. Hunter,* 785 S.W.2d 426, 429 (Tex.App.—Corpus Christi 1990, orig. proceeding).

## B. ANALYSIS

The Court concludes that the Travis County court has dominant jurisdiction because the *Cotera* plaintiffs' claims were ripe when Cotera filed suit and because the *Del Rio* plaintiffs amended their petition on the same day *Cotera* filed suit. However, even assuming this is correct and the Harris County trial court abused its discretion in denying the plea in abatement, Bentsen has an adequate appellate remedy. *See Hall,* 907 S.W.2d at 494; *Abor,* 695 S.W.2d at 567.

In determining that Bentsen's appellate remedy is inadequate, the Court concludes that under the circumstances, "further confusion or delay in the trial of a pending challenge to congressional districting poses the very real threat that the parties will not be able to obtain a decision in the state courts that is final on appeal before the October 1 deadline set by the federal courts." 66 S.W.3d at 257. But this analysis is inconsistent with our jurisprudence.

*See Abor,* 695 S.W.2d at 567. If the Harris County case and Travis County case proceed to trial at the same time, neither courts' jurisdiction is affected. The cases, which involve some but not all the same parties, witnesses, and attorneys, can go forward at the same time and proceed to final judgment. Then, the dominant-jurisdiction and abatement issues—the very issues the Court improperly decides by mandamus today—can be properly determined upon appeal.

Indeed, the very same situation confronted this Court in *Hall v. Lawlis.* In *Hall,* the same parties in a dispute arising from the same facts sued each other in different counties. 907 S.W.2d at 494. The court in which the second suit was filed refused to abate or dismiss its proceedings even though the other case was pending. We recognized that the first-filed suit acquired dominant jurisdiction, but, adhering to *Abor,* we denied mandamus relief because the two courts had not directly interfered with each other "by issuing conflicting orders or injunctions." *Hall,* 907 S.W.2d at 494. If we would not grant mandamus relief then, when the cases before it involved the exact same parties and issues, how can the Court do so now? Simply because there are two orders indicating that the trials will proceed at the same time, does not make this case any different than *Hall.* In *Hall,* this Court knew that in denying mandamus relief, both cases would proceed to trial. But it correctly chose to adhere to our caselaw. *See Hall,* 907 S.W.2d at 494–95. The Court should reach the same conclusion here.

Additionally, Bentsen offered no evidence at the hearing on the plea in abatement to demonstrate that the Harris County court had directly interfered with the Travis County court's jurisdiction. *See* TEX.R.APP. P. 52.7; *Walker,* 827 S.W.2d at 833. Indeed, both counsel for Bentsen and real parties in interest agreed at oral argument that the two trials could proceed at the same time. Moreover, the parties noted that the Travis County court had stated that the Harris County court was not interfering with the Travis County court's jurisdiction. There is absolutely nothing in these cases that preclude our applying *Abor* and denying mandamus relief.

Finally, mandamus should not issue in this case, because Bentsen did not first seek relief in the court of appeals as Texas Rule of Appellate Procedure 52.3(e) requires. And, this case does not present "compelling circumstances" for the Court to allow Bentsen to bypass the court of appeals' review. Indeed, this Court denied Weddington's mandamus, which arose from the *Del Rio* trial court's denying her plea to the jurisdiction, because she did not first seek relief from the court of appeals. *See* 66 S.W.3d at 257 n. 90. Not surprisingly, Bentsen opposed Weddington's mandamus petition in that case and argued that no compelling circumstances existed to allow her to bypass the court of appeals and that the Austin court of appeals was in any event better prepared to consider her mandamus because the State defendants' interlocutory appeals were pending there.

Here, the Harris County trial court denied Bentsen's plea in abatement on August 31, 2001, giving him ample time to first seek mandamus relief in the court of appeals. Also, an interlocutory appeal from the Harris County trial court's order denying Speaker Laney's plea to the jurisdiction, raising the same issues as Bentsen urges here, is pending in the Houston court of appeals. This Court's integrity turns upon its consistent application of our procedural rules, and therefore, Bentsen should be required to first seek mandamus relief from the court of appeals.

## C. Conclusion

*Abor* and its progeny recognize that the same parties and the same issues can proceed to trial in different trial courts. Bentsen has an adequate appellate remedy, and therefore, this Court must deny mandamus relief.

## IV. THE COURT'S OPINION

Today, the Court grants mandamus relief as an end-run around the conflicts-jurisdiction issue in *Del Rio* and to avoid deciding that the court of appeals erred in dismissing *Cotera* for lack of jurisdiction. The inconsistencies in the Court's opinion support my conclusion:

- The Court acknowledges that state law should determine jurisdictional issues, but then applies federal law contrary to Texas' ripeness doctrine to conclude that *Del Rio* is ripe.
- After discussing the more liberal federal ripeness standards that Texas law supposedly reflects, the Court boldly states, with no Texas authority cited whatsoever, that "the ripeness doctrine is no less functional under Texas law." 66 S.W.3d at 251.
- The Court's writing completely ignores the reasoning the court of appeals applied in *Del Rio* to conclude the case was ripe. Instead, the Court applies federal ripeness analysis to avoid discussing the court of appeals' faulty reasoning.
- The Court summarily dismisses *Cotera* as moot without acknowledging that the Court's jurisdiction is limited to determining whether the court of appeals had jurisdiction to hear the appeal—which it did.
- Relying on *Leach v. Brown*, 292 S.W.2d 329, 331 (Tex.1956), the Court states that an amended pleading should be treated as a new suit for purposes of determining dominant jurisdiction. But in *Leach*, the trial court dismissed the original petition and the parties unsuccessfully appealed that final order. The amended petition was filed in the same trial court after the appeal was final, and thus, the petition was treated as a new suit.
- To circumvent *Abor*, the Court casually remarks that "[i]t is unimportant to the issue of dominant jurisdiction which court first set an earlier trial date." There is no Texas authority for this statement, and it appears to exist only as a figment of the Court's mind. Indeed, this statement flies in the face of our jurisprudence holding that courts grant mandamus relief in dominant-jurisdiction cases only when the offending court's order directly interferes with the other court's *jurisdiction*. Here, the Harris County court did not enter an order that interfered with any action of the Travis County trial court, much less its jurisdiction.
- Bentsen offered no evidence at the hearing on the plea in abatement to demonstrate that the Harris County court had directly interfered with the Travis County court's *jurisdiction*.
- All the parties agreed at oral argument that the two trials could proceed at the same time.
- The Travis County court has stated that the Harris County court was not interfering with the Travis County court's *jurisdiction*.
- The Court grants mandamus relief of the trial court's order denying the plea in abatement, which this Court and courts of appeals have concluded for decades is an incidental trial court ruling not subject to mandamus review.
- In granting mandamus, the Court argues that this case presents exceptional circumstances based on its mere

speculation that the state courts cannot reach a final decision by the October 1 deadline.

- To achieve the result the Court wants to reach, it has to overrule *Gibson* and *Abor*, and its refusal to acknowledge that it has done so is disingenuous.

The Court's writing is nothing more than cleverly crafted linguistic legerdemain designed to obscure the fact that the Court applies federal law contrary to clear Texas precedent in the first instance and grants mandamus contrary to equally clear Texas precedent in the second.

## V. CONCLUSION

For the reasons discussed above, I cannot agree with the Court's disposition of these redistricting petitions. The Court has conflicts jurisdiction to determine that the court of appeals erred in affirming the trial court's order denying the jurisdictional plea in *Del Rio*. The Court should reverse *Del Rio* and the trial court should dismiss that case for want of jurisdiction. Next, because the court of appeals erred in dismissing *Cotera* for want of jurisdiction, we should remand that case to the court of appeals so that the court can decide the appeal on its merits. Finally, we should deny Bentsen's mandamus petition. Because the Court concludes otherwise, I dissent.