**Dissenting Opinion Filed December 16, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-15-01159-CV
_____

## IN RE FORT APACHE ENERGY, INC., ALLAN P. BLOXSOM, AND DRILLING RISK MANAGEMENT, INC., Relators

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-01534**

# DISSENTING OPINION

Before Justices Lang-Miers, Evans, and Whitehill
Dissenting Opinion by Justice Whitehill

The primary dispute in this dominant jurisdiction–plea in abatement mandamus case is whether the second filed court's order setting the matter for trial one month before the dominant court's trial setting presents sufficient "active interference" with the first court's jurisdiction such that relators lack an adequate appellate remedy.

Relators moved to abate a lawsuit against them, contending that another Texas trial court possesses dominant jurisdiction over this controversy. The trial court denied relators' motion to abate, and relators sought mandamus relief from this Court. The majority concludes that relators have an adequate remedy by appeal and so denies relief. I disagree and respectfully dissent.

## I. BACKGROUND

The real party in interest is Huddleston Exploration Limited Liability Company. In November 2014, relator Fort Apache Energy, Inc. sued Huddleston in Kendall County, Texas. Fort Apache alleged the following facts:

Fort Apache and Huddleston entered into a Participation Agreement and an Operating Agreement in June 2012. These agreements obliged Huddleston to pay 65% of the drilling and completion costs of a certain mineral well, and Huddleston defaulted.

In October 2014, the parties met in Kendall County and executed a further Payment Agreement in which Huddleston promised to pay its past due obligations pursuant to a payment schedule or risk triggering remedies available to Fort Apache under the Operating Agreement. After Huddleston breached the Payment Agreement, Fort Apache sought a court order transferring Huddleston's interest in the well to Fort Apache, plus court costs and attorneys' fees.

Huddleston answered the Kendall County suit, but two months later sued Fort Apache and the other relators in Dallas County. After amending its Dallas County pleading twice, Huddleston alleged that (i) Fort Apache had breached the Participation Agreement and the Operating Agreement, (ii) Fort Apache and relator Bloxsom committed breach of fiduciary duty, fraud, and negligent misrepresentation, and (iii) Huddleston was entitled to an accounting from Fort Apache, Bloxsom, and relator Drilling Risk Management, Inc.

The parties litigated forum selection issues in both courts. The Kendall County court refused to transfer venue to Dallas County. Relators moved the Dallas County court to abate the case because the Kendall County court had dominant jurisdiction over the controversy, but the court denied that motion.

Meanwhile, in March 2015, the Dallas County court set its case for trial on February 22, 2016. In June 2015, the Kendall County court set its case for trial on March 14, 2016.

Relators filed this original proceeding in September 2015, about six weeks after the Dallas County court denied relators' motion to abate. We requested and received a response, to which relators replied.

## II. ANALYSIS

### A. Did the trial court clearly abuse its discretion?

The majority does not address whether relators have shown that the trial court clearly abused its discretion by denying relators' motion to abate. I would address that issue and hold that the trial court clearly abused its discretion because relators established that the Kendall County court possessed dominant jurisdiction over this controversy.

The question is whether there is an inherent interrelationship between the subject matters of the two lawsuits:

> When an inherent interrelation of the subject matter exists in two pending lawsuits, a plea in abatement in the second action must be granted. It is not required that the exact issues and all the parties be included in the first action before the second is filed, provided that the claim in the first suit may be amended to bring in all necessary and proper parties and issues. . . . In determining whether an inherent interrelationship exists, courts should be guided by the rule governing persons to be joined if feasible and the compulsory counterclaim rule.

*Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247 (Tex. 1988); *see also* TEX. R. CIV. P. 97(a) (compulsory counterclaim rule).

The two lawsuits involved here are inherently interrelated. Fort Apache is the plaintiff in Kendall County and a defendant in Dallas County. Huddleston is the defendant in Kendall County and the plaintiff in Dallas County. Although Bloxsom and Drilling Risk Management are parties only in the Dallas County suit, there is no indication they could not be added to the Kendall County suit. And the claims and defenses in both suits arise from and relate to the same set of agreements and transactions.

The *Wyatt* test for dominant jurisdiction is satisfied. The trial court had only one reasonable decision it could make: abate its case in favor of the Kendall County action.

**B.    Do relators have an adequate remedy by appeal?**

It is well settled that mandamus will issue only if the relator shows that it lacks an adequate remedy by appeal. *See Walker v. Packer*, 827 S.W.2d 833, 840–44 (Tex. 1992). I disagree with the majority's conclusion that relators have failed to make that showing.

In *Curtis v. Gibbs*, the supreme court addressed a trial court's violation of the dominant jurisdiction rule and said, "If the second court refuses to sustain a proper plea in abatement, *or* attempts to interfere with the prior action, this court has the power to act by mandamus or other appropriate writ to settle the conflict of jurisdictions." 511 S.W.2d 263, 267 (Tex. 1974) (orig. proceeding) (emphasis added).

But in *Abor v. Black*, the court discussed *Curtis* and effectively changed *Curtis*'s "or" to an "and." *See* 695 S.W.2d 564, 567 (Tex. 1985) (orig. proceeding). Although the *Abor* trial court erred by refusing to yield jurisdiction to another court, the supreme court denied mandamus relief because the trial court had not granted an injunction or issued any other order that "actively interfere[d]" with the other court's exercise of jurisdiction. *Id*.

We have interpreted *Abor* to hold the following: "Mandamus relief will not lie, however, to determine dominant jurisdiction between two courts when both courts have jurisdiction to act and neither court is interfering with the other's exercise of jurisdiction." *Reynolds, Shannon, Miller, Blinn, White & Cook v. Flanary*, 872 S.W.2d 248, 250 (Tex. App.—Dallas 1993, no writ).

But in 2004, the supreme court indicated that the determination of whether a relator has an adequate remedy by appeal is not susceptible to rigid rules or formulas. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). Rather, courts must

–4–

consider a range of both public and private interests in determining whether the benefits of mandamus review outweigh the detriments. *Id.*

Since the *Prudential* decision, our sister courts have split on the continued viability of *Abor*'s bright-line rule that mandamus relief will not issue unless there is active interference with the dominant court's jurisdiction. San Antonio has concluded that *Prudential* lifted the constraint imposed by *Abor*. *In re ExxonMobil Prod. Co.*, 340 S.W.3d 852, 857–59 (Tex. App.—San Antonio 2011, orig. proceeding [mand. denied]). However, Texarkana and the Houston Fourteenth Court have continued to follow *Abor*. *In re E. Beach Project Phase I, Ltd.*, No. 14-11-00393-CV, 2011 WL 2650946, at *3 (Tex. App.—Houston [14th Dist.] July 7, 2011, orig. proceeding) (mem. op.); *In re Brown*, No. 06-10-00108-CV, 2010 WL 4880675, at *2 (Tex. App.—Texarkana Nov. 30, 2010, orig. proceeding) (mem. op.).

We have denied relief for lack of active interference in a post-*Prudential* case. *In re City of Coppell*, 219 S.W.3d 552, 562 (Tex. App.—Dallas 2007, orig. proceeding). But we recently noted the conflict between our sister courts of appeals and, without citing *City of Coppell*, suggested that this Court has not yet decided whether *Prudential* changes the rule of *Abor*. *See In re King*, No. 05-15-01035-CV, 2015 WL 6334672, at *3 (Tex. App.—Dallas Oct. 22, 2015, orig. proceeding).

We need not reassess the viability of *Abor* in this case, consider the effect that *Prudential* might have on this case, or choose between our sister courts, because the Dallas County trial court's order setting the case for trial one month before the Kendall County case is set to be tried (and maintaining that trial setting) actively interferes with the Kendall County court's dominant jurisdiction, within *Abor*'s parameters. For example, in *Perry v. Del Rio*, the supreme court faced an array of five lawsuits involving redistricting after the 2010 census. 66 S.W.3d 239–43 (Tex. 2001) (orig. proceeding). Four of the cases were set for trial the same day. *Id*. at 258. The

supreme court first determined which trial court possessed dominant jurisdiction, *id*. at 248–56, and then held that the conflicting trial settings satisfied the *Abor* rule, *id*. at 258. But *Perry* does not require that the trial settings must be contemporaneous before conflicting settings can be active interference.

Furthermore, the San Antonio Court of Appeals has held that a trial setting in violation of another court's dominant jurisdiction is sufficient interference to warrant mandamus relief under *Abor* and *Perry*, even though the dominant court in that case had apparently not yet set its case for trial. *See In re Benavides*, No. 04-14-00718-CV, 2014 WL 6979438, at *3 (Tex. App.—San Antonio Dec. 10, 2014, orig. proceeding) (mem. op.).

In the present case, the trial court's trial setting precedes the trial setting in the dominant court by about three weeks. This state of affairs has existed since June 2015, and the problem has not been remedied in the intervening months—despite relator's bringing this matter to the Dallas County court's attention. The erroneous trial setting is now only about two months away, and what was a potential problem is now an actual problem. Presently, the Dallas County trial court's trial setting interferes with the Kendall County court's ability to try the case at a time consistent with its own docket needs.

Moreover, refusal to correct the trial court's clear abuse of discretion by mandamus presents a strong likelihood of wasted public and private resources alike. The parties will be put to the effort and expense of preparing and trying a case that will result in a judgment almost certainly subject to reversal on appeal. *See In re Prudential*, 148 S.W.3d at 136 (mandamus can "spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings").

The above consequences make relators' remedy by appeal inadequate under even *Abor*.

For the foregoing reasons, I would grant mandamus relief and direct the trial court to abate the case.  Because the majority does not do so, I respectfully dissent.


151159DF.P 05

/Bill Whitehill/
BILL WHITEHILL
JUSTICE