CONDITONALLY GRANT and Opinion Filed October 7, 2020



In The
Court of Appeals
Fifth District of Texas at Dallas

No. 05-20-00578-CV

IN RE EQUINOR TEXAS ONSHORE PROPERTIES F/K/A STATOIL TEXAS ONSHORE PROPERTIES LLC; EQUINOR MARKETING & TRADING (US) INC.; AND EQUINOR NATURAL GAS, LLC, Relators

Original Proceeding from the 101st Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-19-03022

## MEMORANDUM OPINION

Before Chief Justice Burns, and Justices Partida-Kipness and Reichek
Opinion by Chief Justice Burns

Before the Court is relators' petition for a writ of mandamus regarding the trial court's denial of their plea in abatement. In resolving this dispute we must decide whether a plaintiff who initiates separate lawsuits in the same county against different defendants can claim dominant jurisdiction in one of those cases, after agreeing to transfer venue of that case to a different county and subsequently joining the defendant from the case still pending in the transferor county. Relators (collectively "Equinor") assert that the transferred case lacks dominance over the interrelated case still pending in the original venue. We agree and conditionally grant the writ.

# BACKGROUND

Unique procedural developments gave rise to relators' petition. The predecessor in interest to RPI BOKF, N.A. d/b/a Bank of Texas, as trustee for the South Texas Syndicate ("Bank"),[1] owned certain rights to oil and gas in approximately 9.5 million acres in LaSalle County, Texas. Bank leased some of those rights to Whittier Energy Company. The Lease specified the production on which royalties were due, described the manner of calculating royalties, and required the lessee to pay royalties directly to Bank. Whittier sold its leased interests to Repsol Oil & Gas, USA, LLC, f/k/a Talisman Energy USA, Inc. Sometime later, Repsol assigned part of its leased interest to Equinor Onshore, f/k/a Statoil Texas Onshore Properties LLC ("Equinor").

Pursuant to a Joint Development Agreement between Equinor and Repsol, each agreed to pay separately its respective share of royalties owed to Bank. The companies agreed that whichever company was designated as operator for any given year would pay royalties of other working interests to Bank. Over the course of several years, Equinor and Repsol traded the role of operator.

Bank filed separate lawsuits in LaSalle County against Equinor and Repsol alleging each respective defendant had failed to accurately measure, calculate, and

---

[1] "RPI BOKF" is Bank's legal name, although "RPI" also denotes Bank's role in this proceeding as the "real party in interest."

report production, failed to pay or underpaid royalties due Bank, improperly commingled oil and gas production from the Lease with production from other properties, and breached the Lease in other respects. Bank's suit against Repsol was assigned cause number 18-03-00042 in the 218th District Court (the "Repsol Lawsuit"). The file stamp on the Repsol Lawsuit reflected a 10:17 a.m. March 3, 2018 file date and time. Bank's lawsuit against Equinor was assigned cause number 18-03-00043 in the 81st District Court (the "Equinor Lawsuit"), a higher number. The file stamp on the Equinor Lawsuit, however, reflects February 28, 2018 at 8:13 p.m. as the file date, which was three days before the file stamp reflected on the Repsol Lawsuit. Equinor was not named as a defendant in the Repsol Lawsuit, and Repsol was not named as a defendant in the Equinor Lawsuit.

In both lawsuits, Bank initially relied on sections 15.002(a)(1) and 15.011 of the Texas Civil Practice and Remedies Code for venue. At some point not clearly reflected in the record, in the Equinor Lawsuit (but not in the Repsol Lawsuit), Bank amended to also allege mandatory venue in LaSalle County pursuant to sections 91.404(c) and 88.131 of the Texas Natural Resources Code. Equinor did not challenge venue.

Repsol, on the other hand, challenged venue in LaSalle County, and Repsol and Bank ultimately agreed to transfer venue. On February 27, 2019, the Repsol Lawsuit was assigned to the 101st District Court in Dallas County, as cause number

3

19-3022. None of the Equinor entities were parties to the Repsol Lawsuit at the time of transfer, but, on December 30, 2019, Bank filed a third amended petition that added the Equinor entities as defendants. In that third amended petition, Bank relied only on section 115.002 of the property code, which relates to suits by or against trustees or involving trusts, for proper venue.

Equinor filed an objection, a motion to transfer venue, and, subject to the objection and motion, a plea in abatement.[2] Specifically, Equinor objected to Repsol's venue facts in its third amended petition; argued that Bank had judicially admitted mandatory venue for the claims against it lay in LaSalle County; asserted that because the Repsol Lawsuit had been transferred to Dallas, the Equinor Lawsuit was first-filed; and that dominant jurisdiction therefore existed in LaSalle County where the Equinor Lawsuit was pending.[3] After a hearing, the trial court denied the plea in abatement.

Equinor challenges the trial court's ruling, asserting the trial court abused its discretion because as between the concededly interrelated lawsuits: 1) the Equinor Lawsuit, pending in LaSalle County, was first-filed; and 2) no equitable exception to dominance in LaSalle County exists. Equinor seeks a writ as its only remedy to correct the trial court's abuse of discretion. Bank contends: 1) the Repsol Lawsuit,

---

[2] Subject to its objection, motion to transfer, and plea in abatement, Equinor also answered and asserted defenses.

[3] After Equinor challenged venue in the Repsol Lawsuit, Bank filed a motion to abate the Equinor Lawsuit still pending in LaSalle County. Our record does not reflect the status of that motion.

filed originally in LaSalle County but subsequently transferred by agreement to Dallas County, is dominant as the first-filed lawsuit; 2) that trying the lawsuits separately would result in "gross inefficiencies"; and 3) that dominance in Dallas County upholds the purposes of the doctrine.

## DISCUSSION

### A.     Mandamus standard regarding pleas in abatement

Mandamus provides the appropriate remedy when a trial court abuses its discretion by failing to abate a case if an inherently interrelated, earlier filed case is also pending in a Texas court. *In re Red Dot Bldg. Sys., Inc.*, 504 S.W.3d 320, 322 (Tex. 2016) (orig. proceeding); *In re JB Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding).   Trial courts possess considerable discretion in making factual determinations, and errors with respect to factual issues demonstrate an abuse of discretion only when they essentially demonstrate "clear error."   *JB Hunt*, 492 S.W.3d at 294.

On the other hand, trial courts lack discretion in ascertaining the law or applying the law to the facts, even when the law is unsettled. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding).   Accordingly, a trial court *must* grant a motion to abate if the facts underlying the requested abatement are undisputed and the law and facts support abatement.   *JB Hunt*, 492 S.W.3d at 294, 299–300 ("[A] relator need only establish a trial court's abuse of discretion to demonstrate entitlement to mandamus relief with regard to a plea in

abatement in a dominant-jurisdiction case."); *Red Dot Bldg. Sys., Inc.*, 504 S.W.3d at 322. All relevant facts in this matter are undisputed.

## B. Abatement premised on dominant jurisdiction

Texas follows the general rule that with respect to interrelated suits, the "court in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts." *JB Hunt*, 492 S.W.3d at 294. Obvious reasons, like the "conservation of judicial resources, avoidance of delay, comity, convenience, and the necessity for an orderly procedure in the trial of contested issues, [and] . . . to prevent races from court to court by vigilant counsel," support abating a later-filed suit. *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001) (orig. proceeding) (internal quotations omitted).

Several of the underlying policy reasons for the rule also provide clarity for the analysis required here. For instance, once a court of competent jurisdiction assumes jurisdiction over a matter, that court should necessarily possess exclusive jurisdiction "because it is impossible that two courts can, at the same time, possess the power to make a final determination of the same controversy between the same parties." *Id.* (internal quotations omitted). Likewise, simple fairness supports abatement of later-filed suits. "[I]n a race to the courthouse, the winner's suit should have dominant jurisdiction." *Id.*

The dominance analysis requires that we determine, first, whether the lawsuits are interrelated; and second, if interrelatedness exists, whether the trial court abused its discretion if interrelation exists; and third, whether relator has demonstrated entitlement to mandamus relief. *JB Hunt*, 492 S.W.3d at 292. Here, the parties do not dispute the Repsol and Equinor Lawsuits are interrelated[4] but instead focus primarily on which suit is the first-filed and therefore dominant. Because we agree the lawsuits are interrelated, we consider which suit qualifies as first-filed to determine whether an abuse of discretion occurred.

## C.     The Equinor Lawsuit was filed first

Bank contends that the Repsol Lawsuit is the first-filed case and argues Equinor concedes this point. On the contrary, however, while Equinor concedes the cause number assigned in LaSalle County indicates the Repsol Lawsuit was filed in that county before the competing Equinor Lawsuit, it argues that once transferred to Dallas County, the later Dallas County file date controls.

Neither party provides any authority with comparable facts. Unlike the usual scenario in which two different lawsuits are filed in two different counties, both competing lawsuits at issue here were initially filed in the same county. Likewise,

---

[4] Equinor characterizes the claims asserted against it in the Repsol Lawsuit as "virtually identical to" the claims asserted in the Equinor Lawsuit, premised on the same allegations of commingling and underpayment of royalties regarding the same LaSalle County lease and wells. Discovery in the two lawsuits was coordinated, and Bank does not contest interrelatedness. Because we agree with the parties that the two cases are inherently interrelated, we forgo the relatedness analysis.

we have not found and the parties do not identify any authority where one of the competing jurisdictions received the case pursuant to a voluntary transfer. Moreover, in contrast to every other dominant jurisdiction case, here, the same plaintiff filed both lawsuits. We conclude that as between a LaSalle County court that acquired jurisdiction in 2018 and a Dallas County court that acquired jurisdiction pursuant to a voluntary transfer in 2019, where both lawsuits were originally filed in LaSalle County by the same party, the case pending in LaSalle County, the Equinor Lawsuit, is the first-filed case.

### 1. Missing parties whose inclusion is desirable, but not indispensable, do not negate dominance

As an initial matter, we reject Equinor's argument that the Repsol Lawsuit cannot qualify as first-filed because Equinor was not included in that lawsuit until long after it was filed and after it was transferred to Dallas. On the contrary, most authorities suggest Equinor's absence as a party when the Repsol Lawsuit was originally filed in LaSalle County has no bearing on dominant jurisdiction, so long as its addition was possible. *See In re Happy State Bank*, No. 02-17-00453-CV, 2018 WL 1918217, at *5 (Tex. App.—Fort Worth Apr. 23, 2018, orig. proceeding) (mem. op.) (inquiry regarding missing parties, as it relates to dominant jurisdiction, focuses on court's authority to bring all *necessary* parties into the lawsuit); *see also Red Dot Bldg. Sys., Inc.*, 504 S.W.3d at 323 (citing MICHOL O'CONNOR, O'CONNOR'S TEXAS RULES* CIVIL TRIALS 294 (2016) (exceptions to dominant

8

jurisdiction of first court include "[a] party's inability to join necessary parties because it is not feasible or is impossible")). For instance, in *Big 12 Conference, Inc.*, we held "[i]t is undisputed relator is not a party to the first-filed case in Tarrant County; however, that does not foreclose the Tarrant County lawsuit and the Dallas County lawsuit [the later suit in which relator sought abatement], to which relator is a party, from being interrelated." No. 05-18-00975-CV, 2019 WL 457603, at *1 (Tex. App.—Dallas Feb. 6, 2019, orig. proceeding.) (mem. op.). In *Big 12*, the relator was not named as a defendant in the first lawsuit filed in Fort Worth, which was filed as a declaratory judgment action by TCU against an injured player and a medical association. *Id.* at *1. Big 12 nonetheless relied on the Fort Worth case in seeking abatement of the later-filed Dallas case. *Id.* Thus, the relator was not included in the case it argued was dominant, yet we found that earlier case dominant even with respect to a party not yet added to it. *Id.* The same holding applies here. Equinor's absence from the Repsol Lawsuit, when it was initially filed in LaSalle County and when it was transferred to Dallas, does not negate the possibility of dominance by the Repsol Lawsuit.

Inversely, without expressly asserting that Repsol's presence is necessary, Bank argues that because the deadline for adding new parties has passed in the Equinor Lawsuit in LaSalle County, that lawsuit lacks dominance. We decline to accept Bank's premise or conclusion. Bank filed separate lawsuits against separate

9

defendants. That fact alone suggests Bank believed neither was an indispensable party in the lawsuit in which it was not named. *See Red Dot Bldg. Sys., Inc.*, 504 S.W.3d at 323–24 (joinder of additional parties in one suit but not the other had no impact on whether venue was proper in both counties at issue between challenging parties, absent evidence that the missing parties were indispensable); *see also In re Sims*, 88 S.W.3d 297, 304 (Tex. App.—San Antonio 2002, orig. proceeding) (rejecting "unilateral act" by one party, which interpleaded funds into the registry of one competing court, to "circumvent the application of dominant jurisdiction"). For the same reasons, Repsol's absence from the Equinor Lawsuit does not negate the possibility of dominance in that suit.

Nor does an expired deadline that is nonetheless subject to amendment—particularly where a trial date has become stale—demonstrate impossibility of adding a desired, if not indispensable, party given the circumstances at hand. Indeed, as Equinor observes, all deadlines in the Equinor Lawsuit are subject to amendment pursuant to a Rule 11 agreement. Neither Equinor's absence from the Repsol Lawsuit when it was filed nor Repsol's absence from the Equinor Lawsuit informs the potential dominance of either lawsuit.

**2. First-filed status does not relate back to a court in which neither jurisdiction nor venue is currently relevant**

Next, we turn to the file dates and the import of the transfer to Dallas. In contending the Repsol Lawsuit relates back to when that case was filed in LaSalle

10

County, Bank wholly ignores the date on which the Dallas court acquired jurisdiction and venue, a date more than a year after the Equinor Lawsuit was filed. Bank argues instead that the dominant jurisdiction doctrine focuses on venue rather than jurisdiction—a true proposition as far as it goes. *See Gordon v. Jones*, 196 S.W.3d 376, 383 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("Venue pertains solely to where a suit may be brought and is a different question from whether the court has jurisdiction of the property or thing in controversy." (internal quotation omitted)). But Bank's argument fails to acknowledge that venue absent jurisdiction is irrelevant; a court cannot acquire proper venue, let alone dominant jurisdiction premised on proper venue, unless it also has jurisdiction. *See, e.g.*, *id.* ("'Venue' refers to the propriety of prosecuting, in a particular forum, a suit on a given subject matter with specific parties, over which the forum must, necessarily, have subject-matter jurisdiction."). Here, the Dallas court had neither venue nor jurisdiction until the case was transferred—long after the Equinor Lawsuit was filed.

Our conclusion finds support in the mechanics of the first-filed analysis that evaluates the race to the courthouse as between the two courts in competition and determines which of those first acquired jurisdiction and therefore venue. *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988) ("It is well settled that when suit would be proper in more than one county, the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other courts."), *overruled in part*

*on other grounds by*, *J.B. Hunt*, 492 S.W.3d at 292. Calculating dominance based on when a court that is no longer in competition acquired jurisdiction—here the first LaSalle County court—injects an expired interest into the equation.[5]

Similarly, the doctrine focuses on comity—the competing interests of the two courts that have authority to resolve the competing lawsuits. *Perry*, 66 S.W.3d at 252. Balancing those interests based on when a court no longer in the race first acquired jurisdiction injects an irrelevant variable into the calculation. And while the case once transferred does not become a wholly new lawsuit with respect to limitations and proceedings that occurred before transfer, those preceding developments speak to *what* the transferee court acquired, rather than when it acquired it. *See In re Milton*, 420 S.W.3d 245, 254 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding) ("Upon a transfer of venue, the transferred case stands as though originally filed in the transferee court; thus, any order entered in the first trial court has the same effect as an order originally rendered in the transferee court"); *see also In re Paxton*, No. 05-17-00507-CV, 2017 WL 2334242, at *3 (Tex. App.—

---

[5] We recognize that analogizing to the same issue as between one federal court and another where one of those courts received the case through removal suggests the opposite result. *See Igloo Prod. Corp. v. The Mounties, Inc.*, 735 F. Supp. 214, 217 (S.D. Tex. 1990) ("The question is whether in applying the first-filed rule, [to determine whether to abstain or dismiss the later filed case] the Court should look to the date on which the Oregon state court suit was filed or the date on which it was removed to federal court. The Court considers the date of filing in state court to be the relevant benchmark. This conclusion seems inescapable, as a district court takes the case as it finds it when it is removed from state court."). But removal injects yet another variable not at issue here—a *defendant's* efforts to change the forum—and thus we decline to utilize the federal analogy.

Dallas May 30, 2017, orig. proceeding) (mem. op.) (upon transfer, jurisdiction vests in the transferee court and transferor court is divested of jurisdiction).

Moreover, the ripeness analysis utilized by the supreme court in the context of dominant jurisdiction lends analogous support. In *Perry*, the court declined to reward a plaintiff with dominance based on a lawsuit in which the plaintiff asserted clearly unripe claims, "merely to win a race to the courthouse," because that outcome "would encourage the intentional filing of . . . [multiple lawsuits], wasting the court's and parties' resources." *Perry*, 66 S.W.3d at 252–53. The *Perry* court concluded that "the amended pleading [or new lawsuit by which the now ripe claim was added] should be treated for purposes of determining dominant jurisdiction as a new suit as of the time it is filed, but not relating back to the commencement of the action." *Id.* at 253 (footnote omitted). Utilizing this logic, we conclude that treating the date of filing in Dallas as the relevant date for competing with the Equinor Lawsuit pending in LaSalle County recognizes the practicalities of the developments here, as well as the prudential concerns implicated by a contrary outcome.

Finally, our analysis aligns with the rules that dictate the filing order of both lawsuits when originally filed. The Repsol Lawsuit had the lower case number, but a later file stamp. To the extent Equinor suggests the later file stamp on the Repsol Lawsuit displaced it as the first-filed case, we disagree. "[A] case is filed when it is tendered to the clerk and the file stamp does not control." *In re Universal Image,*

*Inc.*, No. 05-00-00034-CV, 2000 WL 127078, at *1 (Tex. App.—Dallas Feb. 4, 2000, orig. proceeding) (mem. op.).  For the same reason, the Equinor Lawsuit was tendered to the LaSalle clerk before the Repsol Lawsuit was tendered to the Dallas clerk.

The LaSalle County court acquired jurisdiction over the Equinor Lawsuit long before the Dallas County court acquired jurisdiction over the Repsol Lawsuit. And ultimately, regardless of which lawsuit was first-filed in LaSalle County, Bank elected to file *both* in LaSalle County before any suit was filed in Dallas County. Accordingly, we conclude the Equinor Lawsuit was first-filed, and dominant jurisdiction lies in LaSalle County.

Our analysis does not end with that conclusion because the concept of dominant jurisdiction has no application where an equitable exception applies, or proper venue does not exist in one of the competing cases. *Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 622 (Tex. 2005) ("dominant jurisdiction" inapplicable unless venue is proper in both competing suits); *Wyatt*, 760 S.W.2d at 248.  Here, Equinor challenged Bank's reliance on the property code for mandatory venue in the Repsol Lawsuit.  In contrast, Bank contends equitable exceptions preclude dominance in the Equinor Lawsuit.

## D.    Mandatory venue creates no exception

When it initially filed these lawsuits, Bank asserted mandatory venue lay in LaSalle County in both cases, premised on section 15.011 of the civil practice and

14

remedies code. At a later date, Bank alleged LaSalle County was the proper venue for the Equinor Lawsuit pursuant to sections 91.404(c) and 88.131 of the natural resources code. Equinor did not challenge venue and no other venue provision was at issue. Thus, in the Equinor Lawsuit, the natural resources code provides mandatory venue[6] in LaSalle County. *See Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, 546 S.W.3d 110, 130 (Tex. 2018) (Courts honor plaintiff's choice of venue, if the choice is "proper" as defined by section 15.001(b) of the civil practice & remedies code, when case is filed); *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 260 (Tex. 1994) ("If the plaintiff's venue choice is not properly challenged through a motion to transfer venue, the propriety of venue is fixed in the county chosen by the plaintiff.").

The analysis in the Repsol Lawsuit differs. After Repsol challenged venue while the case was pending in LaSalle County, Bank and Repsol agreed to transfer the case to Dallas. Once the Repsol Lawsuit was pending in Dallas County, Bank added Equinor, and for the first time in either lawsuit, pleaded mandatory venue pursuant to property code section115.002, based on Bank's status as a trustee.[7]

---

[6] The language of the natural resources code suggests permissive venue, but has been interpreted as mandatory. *Yzaguirre v. KCS Res., Inc.*, 47 S.W.3d 532, 545 (Tex. App.—Dallas 2000) ("By its own terms, the *mandatory* venue provision of section 91.404(c) is limited to lawsuits brought by Lessors to obtain royalty payments.") (emphasis added)), *aff'd*, 53 S.W.3d 368 (Tex. 2001).

[7] Bank pleaded "Plaintiff and the Repsol Defendants have consented to venue in Dallas County, Texas. Plaintiff BOKF as Trustee has a principal office in the State of Texas in Dallas, Texas, and venue is therefore appropriate under Texas Property Code § 115.002. Under Texas Civil Practice & Remedies Code § 15.005, venue is also therefore proper against the Equinor Defendants."

Section 115.002 of the property code provides, in relevant part:

"(a) The venue of an action under Section 115.001 of this Act is determined according to this section

. . . .

(c) If there are one or more corporate trustees, an action shall be brought in the county in which:

(1) the situs of administration of the trust is maintained or has been maintained at any time during the four-year period preceding the date the action is filed; or

(2) any corporate trustee maintains its principal office in this state.

TEX. PROP. CODE § 115.002(a), (c). Section 115.001 in turn provides for jurisdiction in district courts "over all proceedings by or against a trustee and all proceedings concerning trusts." *Id.* § 115.001.

Equinor objected to venue in Dallas County by denying "Plaintiffs [sic] venue facts and contention that venue is appropriate under TEX. PROP. CODE § 115.002 because this action is not brought pursuant to TEX. PROP. CODE § 115.011 [sic][8] which pertains to administration of a trust." The objection rests on a misreading of the property code and the statutory language. "[S]ection 115.001 was amended in 2007 to provide that a district court has original and exclusive jurisdiction over not only all proceedings concerning a trust, but also 'all proceedings by or against a trustee.'" *In re Wheeler*, 441 S.W.3d 430, 434–35 (Tex. App.—Waco 2014, orig.

---

[8] Additional references in Equinor's objection clarify its contention that Bank was not asserting any claims pursuant to §115.001 rather than § 115.011.

proceeding) (quoting TEX. PROP. CODE § 115.001)); *In re J.P. Morgan Chase Bank, N.A.*, 373 S.W.3d 610, 614 (Tex. App.—San Antonio 2012, orig. proceeding) (rejecting interpretation of section 115.001 that case must "concern a trust" following amendment of statute to include "suits by or against a trustee"). Thus, Equinor's challenge failed to demonstrate improper venue pursuant to the property code.

In addition, although Equinor argues to this Court that Bank failed to establish it maintained more than a mailbox or a designated agent or representative in Dallas County, in the trial court Equinor failed to specifically challenge Dallas County as Bank's principal place of business. Properly pleaded venue facts "shall be taken as true unless specifically denied by the adverse party." TEX. R. CIV. P. 87(3)(a). "Specifically denied" requires denial of the challenged fact; not just denial of unspecified facts upon which the plaintiff relies for its venue choice. *Maranatha Temple, Inc. v. Enter. Prods. Co.*, 833 S.W.2d 736, 740 (Tex. App.—Houston [1st Dist.] 1992, writ denied) ("[W]hen a plaintiff pleads that 'Defendant X is a foreign corporation with a registered agent in Harris County,' Defendant X, to 'specifically deny' that venue fact, must make a point of denying that it is a foreign corporation with a registered agent in Harris County."). Equinor failed to specifically deny Bank's venue facts, and accordingly those facts are presumed true. Bank's third

17

amended petition pleaded facts sufficient to lay venue in Dallas County pursuant to the property code.

Proper venue for the Equinor Lawsuit lies in LaSalle County, and proper venue for the Repsol Lawsuit lies in Dallas County.[9] Thus, absent an equitable exception, the LaSalle County court possesses dominant jurisdiction based on the Equinor Lawsuit's first-filed status.

**E.** **No equitable or other concerns displace the LaSalle County court's dominance**

None of the other issues raised by the parties are controlling. In defending the trial court's denial of abatement, Bank relies on Equinor's allegedly inequitable, foot-dragging conduct, and argues abatement will unreasonably delay resolution.[10] Bank also argues that because joint and several liability exists between Equinor and Repsol, separate trials would preclude a "just adjudication," and asserts Repsol's joinder in the Equinor Lawsuit is not feasible because the deadline for joining new parties provided by the Scheduling Order in that case has passed.

---

[9] We recognize certain circumstances may require a court to prioritize competing mandatory venue provisions. *See Perryman*, 546 S.W.3d at 133 (when parties rely on competing mandatory venue provisions, court determines which is superior by recognizing deference afforded a plaintiff's venue choice, and evaluating the "primary relief" sought by the plaintiff). But here, the parties instead argue about which case was first-filed and whether the property code has any application. Neither party asserts one mandatory venue provision—the natural resources code versus the property code—outranks the other, based on the primary relief at issue or any other consideration. And, each statute provides proper venue in the suit in which it is pleaded. We accordingly decline to undertake an analysis ranking mandatory venue as between the property code and the natural resources code.

[10] Equinor responds to these arguments by complaining about Bank's forum shopping.

The first-filed rule yields to other considerations in three instances: "(1) [c]onduct by a party that estops him from asserting prior active jurisdiction; (2) lack of persons to be joined if feasible, or the power to bring them before the court; and (3) lack of intent to prosecute the first lawsuit." *Wyatt*, 760 S.W.2d at 248; *Perry*, 66 S.W.3d at 252. The first two exceptions are potentially relevant.

The inequitable conduct exception recognizes that a "plaintiff in the first suit may be guilty of such inequitable conduct as will estop him from relying on that suit to abate a subsequent proceeding brought by his adversary." *J.B. Hunt*, 492 S.W.3d at 294 (quoting *Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex. 1974)). "[E]stablishing inequitable conduct alone is insufficient because the inequitable-conduct exception is a remedy for the second-filer who is delayed—that is, prejudiced—by inequitable conduct." *In re Tex. Christian Univ.*, 571 S.W.3d 384, 392 (Tex. App.—Dallas 2019, orig. proceeding) (internal quotation omitted)). Here, Equinor did not file either lawsuit; it is neither the first nor the second filer, and neither party provides any authority supporting use of a defendant's purportedly inequitable conduct to estop a plaintiff. Indeed, we see no possibility of prejudicing a plaintiff in this circumstance, where the plaintiff selected both forums. Although these arguments might estop Bank from contending the Equinor Lawsuit was first-filed if Equinor had filed that lawsuit, nothing Equinor did or did not do impacted the priority of these lawsuits. The inequitable conduct exception does not apply.

19

As discussed above, neither Equinor's original absence from the Repsol Lawsuit nor Repsol's current absence from the Equinor Lawsuit negates interrelatedness between the two lawsuits. *See Big 12 Conference, Inc.*, 2019 WL 457603, at *1; *Red Dot Bldg. Sys., Inc.*, 504 S.W.3d at 323–24; *see also Sims*, 88 S.W.3d at 304. In the same manner, neither absence triggers the second exception. Bank argues to the contrary, premised on the potential joint and several liability of Repsol and Equinor, contending that "joinder of Relators in the Dallas County case is needed to attain a just adjudication," relying on *Wyatt* and its reference to Texas Rule of Civil Procedure 39 . Even if we were to conclude joint and several liability triggered the second exception allowing the second-filed case to proceed, Bank admits Equinor and Repsol operated the wells at different times, suggesting joint and several liability does not exist. Moreover, assuming Repsol's joint and several liability for Equinor's conduct, Bank has provided no support for the inverse.

Nonetheless, Repsol's presence in the Equinor Lawsuit would eliminate the risk of inconsistent verdicts as well as the potential risk to Repsol arising from a liability determination as to Equinor for which Repsol may also be responsible. Indeed, given its potential joint and several liability, incentive exists for Repsol to voluntarily intervene or cooperate with any motion by Bank to join it in the Equinor Lawsuit while this one is stayed. And even more notably, at the hearing on Equinor's plea in abatement, Repsol unequivocally supported Equinor's plea, in part because

of what it characterized as Bank's "blatant forum shopping." Given: 1) the COVID-induced stay of the trial setting; 2) an express provision allowing the parties to amend the Scheduling Order's deadlines; 3) Repsol's agreement with staying the Repsol Lawsuit in favor of proceeding with the first-filed Equinor Lawsuit; and 4) shared discovery between the interrelated suits, Repsol's joinder in the Equinor Lawsuit appears more than feasible. The viable options for joining Repsol in the Equinor Lawsuit lessen or avoid the prejudice arising from Repsol's absence, without rewarding the potential impediments created by Bank's choices. Recognizing the Equinor Lawsuit as first-filed permits just adjudication.

Bank also focuses more broadly on efficiency and expediency, arguing COVID and staffing concerns will unreasonably delay trial in LaSalle County.[11] Notably, however, Bank conditions even these arguments on its assertion that the Repsol Lawsuit is dominant. Although Bank does not expressly rely on it, one phrase in *Perry* suggests potential discretion supporting the trial court's denial of Equinor's motion to abate:

> The first-filed rule admits of exceptions when its justifications fail, as when the first court does not have the full matter before it, *or when conferring dominant jurisdiction on the first court will delay or even prevent a prompt and full adjudication*, or when the race to the courthouse was unfairly run.

---

[11] Based on the anticipated two-week period necessary to try the case, the LaSalle County court informed the parties they would need to provide their own judge and court reporter.

*Perry*, 66 S.W.3d at 252 (emphasis added). No support exists for interpreting this single phrase for the proposition that a slower trial date or a heavier case-load satisfies the "delay" exception providing discretion to deny abatement in a later-filed case. Indeed, the very next paragraph of *Perry* explains the exception to the first-filed rule dependent on delay arises when "joinder of parties is infeasible or impossible." *Id.* (citing *Wyatt,* 760 S.W.2d at 246–47). The lone strand of text in isolation accordingly provides no support for an exercise of discretion to deny abatement of a case that may proceed to trial more quickly than a related, but slower case.

More important than Equinor's factual rebuttal of Bank's delay and efficiency arguments,[12] are its legal assertions that while those factors underlie the basis for the doctrine, they do not alone inform or excuse adherence to dominance. If the lawsuits are interrelated and none of the three *Wyatt* exceptions applies, the first-filed lawsuit is dominant and abatement of the second suit is mandatory. *J.B. Hunt*, 492 S.W.3d at 294 ("[C]ourt in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts" requiring as result, that "a plea in abatement in the second action *must* be granted"); *French v. Gilbert*, No. 01-07-00186-CV, 2008 WL 5003740, at *4 (Tex. App.—Houston [1st Dist.] Nov. 26, 2008, no pet.) (mem.

---

[12] Indeed, although COVID interruptions undoubtedly impact all trials in Texas, no evidence suggests Dallas County can or will resume jury trials before LaSalle County.

22

op.) ("The granting of a plea in abatement in a later-filed suit is mandatory when 'an inherent interrelation of the subject matter exists in two pending lawsuits.'") (quoting W*yatt*, 760 S.W.2d at 247)). But no authority suggests these factors provide discretion to abate a first-filed, interrelated dominant case absent an applicable *Wyatt* exception. *See Coastal Oil & Gas Corp. v. Garza Energy Tr.*, 268 S.W.3d 1, 26 (Tex. 2008) (later-filed suit must be abated where suits are interrelated; abatement premised on principles of comity, convenience, and orderly procedure arises "otherwise" only in the absence of such interrelatedness). Because the cases are interrelated and no exception to dominance applies, the Dallas court lacked discretion to deny abatement.

## CONCLUSION

This proceeding presents complex questions of law, but no disputed facts. Because the facts are undisputed and the Equinor Lawsuit pending in LaSalle County dominates over this Repsol Lawsuit, the trial court abused its discretion in failing to abate. Equinor lacks an adequate appellate remedy for the error and we conditionally grant mandamus relief. The writ will issue only if respondent fails to grant relators' plea in abatement.

/Robert D. Burns, III/
ROBERT D. BURNS, III
200578F.P05                                        CHIEF JUSTICE

23