

# Fourth Court of Appeals
## San Antonio, Texas

## DISSENTING OPINION

No. 04-24-00300-CV

**SAN ANTONIO FAMILY ASSOCIATION**, Texas Right to Life, Texas Leadership Coalition, Texans for Fiscal Responsibility, Bexar County Republican Party, Allied Women's Center of San Antonio, San Antonio Coalition for Life, Texas Eagle Forum, Unite San Antonio, Patrick Von Dohlen, Michael R. Knuffke, Daniel J. Petri, K. Jason Khattar, Susan Bayne, Aileen Boone, Kevin Choate, Marilyn Choate, Elizabeth Anne Comeaux, Paul Julienne Comeaux, Sonia Cantoral, Eli Danze, Alice Davis, Dennis Dewine, Robert Gonzalez, Sandra Kaye Kiolbassa, Agustín McLamb-Quiñones, David Nelson, Aloys Joseph Notzon, Anna Rojas, Philip Trickett, Doris Walsh, Von Dohlen Knuffke Financial Group Inc., Khattar Law Office, and Hartzheim Petri CPA,
Appellants

v.

The **CITY OF SAN ANTONIO**, Ron Nirenberg, in his official capacity as mayor of the City of San Antonio, and Erik Walsh, in his official capacity as city manager of the City of San Antonio,
Appellees

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2023CI22459
Honorable Cynthia Marie Chapa, Judge Presiding

Opinion by: Rebeca C. Martinez, Chief Justice
Dissenting Opinion by: H. Todd McCray, Justice

Sitting:      Rebeca C. Martinez, Chief Justice
              Irene Rios, Justice
              H. Todd McCray, Justice

Delivered and Filed: June 30, 2025

Because I would find the trial court has subject matter jurisdiction over the underlying matter, I respectfully dissent from the majority opinion.

***Appellants' claims are ripe because they allege the threat of illegal spending by the City.***

First, I believe the majority has applied an overly strict approach to ripeness. To demonstrate ripeness, a party need only demonstrate an injury is *likely*. *See Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020) ("In determining whether a case is ripe, the focus is on whether the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote.") (cleaned up); *City of Waco v. Texas Nat. Res. Conservation Comm'n*, 83 S.W.3d 169, 175 (Tex. App.—Austin 2002, pet. denied) ("A claimant is not required to show that the injury has already occurred, provided the injury is imminent or sufficiently likely.").

This approach is especially relevant given that Appellants are seeking declaratory relief. The UDJA "is intended as a means of determining the parties' rights when a controversy has arisen but *before a wrong has been committed*, and is preventative in nature." *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011) (per curiam) (quotations omitted) (emphasis added); *see also City of Waco*, 83 S.W.3d at 175 ("[A] person seeking a declaratory judgment need not have incurred actual injury; a declaratory judgment action will lie if the facts show the presence of "ripening seeds of a controversy.") (quoting *Tex. Dep't of Banking v. Mount Olivet Cemetery Ass'n*, 27 S.W.3d 276, 282 (Tex. App.—Austin 2000, pet. denied)). Accordingly, the Texas Supreme Court acknowledges "UDJA suits are often brought with an eye to *future* harm." *Lynch*, 595 S.W.3d at 685) (emphasis added).

"A plaintiff may very well present a court with a justiciable controversy when the plaintiff asserts that a live controversy exists and harm will occur if the controversy is left unresolved."

*Lynch*, 595 S.W.3d at 685. In determining whether a declaratory judgment action is a ripe controversy, "the declaration sought must actually resolve the controversy." *Id.* (quoting *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 164 (Tex. 2004)).

I believe Appellants' pleadings, and the jurisdictional evidence, established a live controversy exists and harm will occur if the controversy is left unresolved, namely that taxpayer funds would be used for alleged illegal purposes. It is undisputed that the San Antonio City Council ("City Council") created the Reproductive Justice Fund with an initial allocation of $500,000 of taxpayer funds to Metro Health. Metro Health then listed several "current needs" that it recommended be addressed by the Reproductive Justice Fund, including "[t]ransportation to abortion care." Appellants allege the City Council intends to use money from the Reproductive Justice Fund for that purpose, and jurisdictional evidence establishes that Mayor Ron Nirenberg and a majority of the City Council publicly support using the taxpayer funds for this purpose. These allegations and evidence demonstrate a live controversy and harm to taxpayers will occur if the City allocates taxpayer funds for the alleged illegal purposes.

While I agree with the majority that comments from individual City Council members do not bind the City, I disagree that Texas law forecloses finding a live controversy exists absent a final vote from the City specifically appropriating funds for the alleged illegal purposes, which would harm taxpayers.[1]

---

[1] The majority asserts the City's intent has not yet formed as there has been no official act allocating taxpayer funds to the alleged illegal purposes, and cites *Lira v. Greater Houston German Shepherd Dog Rescue, Inc.*, for the proposition that "courts discern city-council intent, when possible, from the plain meaning of the words chosen in city ordinances." 488 S.W.3d 300, 304 (Tex. 2016). However, *Lira* was explaining interpretation principles and that "[w]e construe city ordinances under the same rules applicable to the construction of statutes." *Id.*; *see also Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011) (noting evidence against finding illegal proposed expenditures included "then-mayor Bill White['s response to Proposition 2's inclusion] in the City Charter, *stated his intention* to comply with the caps Prop. 2 imposed.") (emphasis added).

For instance, our sister court of appeals in Austin recently held that a dispute regarding a potential condemnation proceeding was ripe despite the fact that the City Council had not yet voted to file a condemnation petition.

> The City had set the condemnation proceeding on the City Council's agenda for its meeting exactly 14 days later, on January 17, 2023. . . . After a City Council vote to initiate a condemnation proceeding, the only step remaining was for the City to file a condemnation petition. The City followed all the necessary statutory steps under Chapter 21 to file a condemnation petition and had informed Oncor multiple times of its intent to file a condemnation suit if an agreement for the City to purchase the Streetlight System could not be reached. The City was poised to take the vote required by Government Code Section 2206.053 and to file its Chapter 21 condemnation petition when Oncor filed its suit and application for a TRO. . . . We conclude that Oncor's claims are ripe because it has shown a threat of litigation in the immediate future that could lead to the concrete injury of the loss of possession of the Streetlight System and the concomitant inability of Oncor to comply with its statutory duty under PURA and the operational difficulties that would occur during a transfer of possession.

*City of Killeen v. Oncor Elec. Delivery Co. LLC*, 709 S.W.3d 746, 757–58 (Tex. App.—Austin 2025, no pet.). While the City of Killeen had taken preliminary steps that made the *threat* of condemnation more tangible, it had not yet voted to approve the filing of the condemnation proceeding. Still, the Austin Court of Appeals determined "[t]his 'threat of harm is more than conjectural, hypothetical, or remote.'" *Id*. (quoting *Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 78 (Tex. 2015)); *see Lynch*, 595 S.W.3d at 683.[2]

Similarly, in the present matter, steps have been taken by the City (creating the Reproductive Justice Fund) and Metro Health (recommending money from the fund be allocated to alleged illegal activities), that establish harm will occur if the controversy is left unresolved.

---

[2] The Austin court also noted that "ripeness analysis requires that we evaluate both the fitness of the issues for judicial decision *and the hardship to the parties of withholding court consideration*." *City of Killeen*, 709 S.W.3d at 758 (alterations omitted) (emphasis added). As noted in the following section, taxpayer standing only applies *before* funds are actually spent. Accordingly, while Appellees argue that Appellants can re-file this suit if the City decides to use the Reproductive Justice Fund in the threatened manner, there is some risk that postponing resolution of this matter would allow funds to be spent, depriving Appellants of standing. *See, e.g.*, *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 558 (Tex. 2000) (leaving open the issue of whether taxpayer standing may be lost when a contract with a government entity is only partially performed).

Public statements by the mayor and a majority of City Council members—supporting the use of taxpayer funds for these alleged illegal activities—provide evidence that this alleged illegal spending will occur and that this is not merely an academic or theoretical dispute.

Further, as addressed in the following section, "[t]axpayer-standing principles strike a balance between 'the protection afforded taxpayers' by permitting such suits compared to 'the interference such suits pose to government activities.'" *Dewhurst v. Hendee*, 253 S.W.3d 320, 332 (Tex. App.—Austin 2008, pet. denied) (quoting *Bland*, 34 S.W.3d at 557). The majority correctly states that the ripeness doctrine's focus on waiting for a case to timely and factually develop allows for the proper development of the state's jurisprudence and prevents excessive intrusion from courts on the policymaking domains of the other branches of government. However, this matter involves a purely legal inquiry that will not benefit from the development of additional facts. *See* TEX. CIV. PRAC. & REM. CODE § 37.002(b) (providing the UDJA is remedial statute designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations"). The trial court can determine whether the threatened spending is illegal (under Appellants' various theories), without waiting for the City Council to actually commit an *ultra vires* act. *See City of Killeen*, 709 S.W.3d at 757–58.

Because Appellants properly alleged a live controversy, and presented jurisdictional evidence supporting their allegations, that harm will occur if the City Council commits an *ultra vires* act by spending taxpayer money in an illegal manner, I would hold Appellant's claim is ripe.[3]

---

[3] Even if this matter had not been ripe when before the trial court, I would find that the dispute has since ripened and, therefore, this case should not be dismissed. The Texas Supreme Court has held that "just as a case may become moot after it is filed, it may also ripen." *Perry v. Del Rio*, 66 S.W.3d 239, 251 (Tex. 2001). On April 3, 2025, the City Council voted to allocate an additional $100,000 to the Reproductive Justice Fund for "expedited procurement for downstream services to support reproductive and sexual healthcare services which may include out of State travel." Given this allocation expressly authorizes the use of taxpayer funds for one of the alleged illegal purposes, this matter is ripe and need not be dismissed. *See id.* at 252 ("[W]e hold that a claim's lack of ripeness when filed is not a jurisdictional infirmity requiring dismissal if the case has matured."); *RO-BT Investments, LLP v. Le Properties, LLC*, No. 14-13-00034-CV, 2014 WL 259826, at *2 n.1 (Tex. App.—Houston [14th Dist.] Jan. 9, 2014, no pet.) ("Further,

***Appellants have demonstrated taxpayer standing.***

I believe Appellants have also established taxpayer standing sufficient to file suit enjoining the City from spending taxpayer funds for an alleged illegal purpose.[4]

Generally, parties do not have standing to sue unless they can show, among other things, that they have "suffered a particularized injury distinct from that suffered by the general public." *Bland*, 34 S.W.3d at 555–56 (footnote omitted). "But in Texas law there is a long-established exception to this general rule: a taxpayer has standing to sue in equity to enjoin the illegal expenditure of public funds, even without showing a distinct injury." *Id.*, at 556. The municipal taxpayer standing cases are clear that you can sue to stop *proposed* expenditures. *See Williams v. Lara*, 52 S.W.3d 171, 180 (Tex. 2001) ("A taxpayer may maintain an action solely to challenge proposed illegal expenditures . . . ."); *City of Austin v. McCall*, 68 S.W. 791, 794 (Tex. 1902) ("The citizen need not wait until an unlawful contract has been consummated, but may prevent the wrongful act by injunction."); *Hendee v. Dewhurst*, 228 S.W.3d 354, 379–80 (Tex. App.—Austin 2007, pet. denied) ("We see no meaningful distinction, for example, between a taxpayer suit to enjoin expenditures under an allegedly void or illegal contract . . . and a taxpayer suit to prevent expenditures under an unlawful legislative appropriation as Plaintiffs allege here.") (citations omitted).

As addressed above, Appellants seek to enjoin proposed spending they claim is illegal. Appellees claim taxpayer standing is not available because the City Council has not yet voted to

---

we note that a controversy may ripen after filing of the petition, and a suit need not be dismissed under those circumstances.") (citing *Perry*, 66 S.W.3d at 251-52). I also believe the majority's assertion that the recent $100,000 allocation is not at issue—because "appellants' petition challenges only the City's FY 2024 allocations"—results from reading the petition too narrowly. While the petition challenges the establishment and initial funding of the Reproductive Justice Fund, the petition also seeks "a declaration that the Reproductive Justice Fund may not be used to provide *any taxpayer money*" towards the alleged illegal purposes and asks for "a temporary and permanent injunction that prohibits the defendants from providing *any taxpayer money*" towards the alleged illegal purposes.

[4] Appellants have plead facts sufficient to establish they are "taxpayers" for the purpose of this analysis and Appellees have not challenged these assertions.

approve any contracts relating to the Reproductive Justice Fund—asserting that there can be no proposed funding until such a contract is approved. However, the Thirteenth Court of Appeals recently held an alleged *intent* to make illegal expenditures is sufficient to support taxpayer standing.

> [T]he taxpayer Workers need only show that the District *plans* to use their collected taxes to pay the challenged "prevailing wage rates." . . . Dibala's declaration that the prevailing wage rates were approved for "upcoming CCISD construction projects," and IBEW's email representing that the prevailing wage rates were associated with voter-approved bond packages *constitutes some evidence that the District plans on making these allegedly illegal expenditures in the near future.*

*Int'l Bhd. of Elec. Workers, Loc. 278 v. Corpus Christi Indep. Sch. Dist.*, No. 13-24-00035-CV, 2024 WL 4982139, at *6 (Tex. App.—Corpus Christi–Edinburg Dec. 5, 2024, pet. filed) (mem. op.) (emphasis added).

Similarly, the creation of the Reproductive Justice Fund, the recommendation that money from the fund be allocated to alleged illegal activities, and public statements by the mayor and a majority of City Council members supporting this use of taxpayer funds provide some evidence that there is a substantial risk this alleged illegal spending will occur. Accordingly, I would find that Appellants have taxpayer standing to challenge this proposed spending.

While the majority is correct "that the ripeness doctrine incorporates the prudential concern that courts not intrude upon the policymaking domains of the politically accountable branches of government," as noted earlier, taxpayer-standing principles strike a balance between protecting taxpayers and limiting interference that suits impose on government activities. *Dewhurst*, 253 S.W.3d at 332. In this manner, a taxpayer standing suit is like an *ultra vires* suit which, in seeking compliance with the law, "does 'not seek to alter government policy but rather to enforce existing policy.'" *Lewis v. Di Camillo*, No. 01-19-00764-CV, 2021 WL 3775604, at *3 (Tex. App.—

Houston [1st Dist.] Aug. 26, 2021, no pet.) (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)).

Also like an *ultra vires* suit, taxpayer standing only gives the plaintiff the right to seek prospective relief. *See City of Dallas v. Albert*, 354 S.W.3d 368, 378–79 (Tex. 2011) (holding only prospective relief is available in *ultra vires* actions). Once money has been spent or a debt has been incurred, the taxpayer no longer owns a justiciable interest in the controversy and loses standing. *See Texans Uniting for Reform & Freedom v. Saenz*, 319 S.W.3d 914, 920 (Tex. App.—Austin 2010, pet. denied) ("Importantly, these principles confer standing on taxpayers only to assert claims to restrain prospective governmental expenditures—money that has not yet been spent."); *see also Wilson v. Whitmire*, No. 01-03-01059-CV, 2004 WL 2613877, at *4 (Tex. App.—Houston [1st Dist.] Nov. 18, 2004, no pet.) (mem. op.) ("Because the exception permits only challenges that enjoin proposed expenditures, a taxpayer has no standing to recover public funds that have already been spent. Only the public entity affected by an allegedly illegal expenditure has standing to sue to recover already expended funds.") (citations omitted). Accordingly, I believe the taxpayer standing cases lend further support that the challenge to the alleged expenditure here is ripe, especially since Appellants could be left without a remedy (*i.e.*, the loss of standing) should any funds be spent in the alleged illegal manner. For these reasons, I would determine Appellants have taxpayer standing to challenge the proposed spending of taxpayer funds for the alleged illegal purposes.

### Appellants have demonstrated standing to seek injunctive relief.

Independent from taxpayer standing, I believe Appellants have established standing to seek injunctive relief. "[A] substantial risk may satisfy the concrete-injury requirement for injunctive relief, if that risk is based on a reasonable inference from specifically alleged, current facts." *Grassroots Leadership, Inc. v. Tex. Dep't of Fam. & Protective Servs.*, 646 S.W.3d 815,

820 (Tex. 2022) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021)); *TransUnion LLC*, 594 U.S. at 435 ("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring . . . ."). *See also Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 152 n.60 (Tex. 2012) ("Because standing is a constitutional prerequisite to maintaining a suit under both federal and Texas law, we look to the more extensive jurisprudential experience of the federal courts on this subject for any guidance it may yield."). Appellants' pleadings and jurisdictional evidence showing the creation of the Reproductive Justice Fund, the recommendation that money from the fund be allocated to alleged illegal activities, and public statements by the mayor and a majority of City Council members supporting this use of taxpayer funds, demonstrate a substantial risk that the alleged illegal spending will occur. Accordingly, I would find Appellants have standing to seek injunctive relief to prevent this proposed spending.

### Appellants' standing further supports finding the matter is ripe.

As addressed in the ripeness analysis above, I believe Appellants have demonstrated this matter is ripe by presenting a live controversy exists and harm will occur if the controversy is left unresolved. *See Bland*, 34 S.W.3d at 556; *Lynch*, 595 S.W.3d at 685. However, Appellants' establishment of taxpayer standing, and standing to seek injunctive relief, further support finding this matter is ripe absent a concrete injury.

As a general matter the standing and ripeness doctrines are directed to different concerns. "While standing focuses on the issue of who may bring an action, ripeness focuses on when that action may be brought." *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000). "However, to the extent that the justiciability challenge focuses on the sufficiency versus remoteness of the alleged injury, ripeness and standing concerns merge." *Roshan v. Smith*, 615 F.

Supp. 901, 904–05 (D.D.C. 1985) (citing *Duke Power Co. v. Carolina Environmental Study Groups, Inc.*, 438 U.S. 59, 81 (1978)); *see also Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998) ("In many cases the two problems of standing and ripeness are merged . . . ."); *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) ("[I]n 'measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges almost completely with standing.'") (quoting Gene R. Nichol, Jr., *Ripeness and the Constitution*, 54 U. CHI. L.REV. 153, 172 (1987)).

In the present matter, these concepts appear to have merged given the relief sought. Ripeness under the UDJA does not require an injury, as declaratory relief is available to prevent harm before a wrong has been committed. *Lynch*, 595 S.W.3d at 685; *Lehmann*, 359 S.W.3d at 624. Similarly, standing to seek injunctive relief requires only the reasonable risk of harm, not a concrete-injury. *Grassroots*, 646 S.W.3d at 820. Finally, Appellants have asserted taxpayer standing, which appears to combine these approaches to ripeness and standing by allowing a taxpayer "to sue in equity to enjoin the illegal expenditure of public funds, even without showing a distinct injury." *Bland*, at 556.

Because neither the relief sought nor the basis for standing asserted requires a concrete injury, I believe the issues of standing and ripeness in this matter are merged. Accordingly, I believe that by establishing standing, Appellants have further demonstrated this matter is ripe.

For these reasons, I would determine Appellants have established standing to challenge the proposed spending of taxpayer funds for the alleged illegal purposes and that they have demonstrated this matter is ripe by presenting a live controversy exists and harm will occur if the

controversy is left unresolved. *See Bland*, 34 S.W.3d at 556; *Lynch*, 595 S.W.3d at 685. Therefore, I respectfully dissent from the majority opinion.

H. Todd McCray, Justice